ELIZABETH ANN GARR, Respondent, v. A. E.
CRANNEY, as Administrator of the Estate of JOHN
T. GARR, Deceased, Appellant.

#### No. 1396.    (70 Pac. 853.)

**2. Work and Labor: Express Contract: Evidence: Implied
Contract.**

Testimony that defendant's intestate promised plaintiff that "he
would pay her for all she had ever done or would do for him,"
and that he "would make out a will for her and her children,"
did not tend to prove an express contract for plaintiff's services,
so as to be objectionable when introduced in an action on an
implied contract.

**1. Objection to Evidence: When taken.**

An objection after cross-examination to testimony given on direct
examination is not seasonably made.

**3. Value of Services: Qualifications of Witness: Expert
Testimony: Admissibility.**

Where there was evidence, though not very clear, as to the quali-
fications as an expert of a witness who testified as to the
value of services rendered in the care of a house, and of mate-
rials furnished, the Supreme Court will not disturb the discre-
tion of the trial court in admitting such testimony.

**4. Denial of Motion to Strike out Immaterial Evidence
Harmless Error.**

In an action for services in the care of a house, rendered defendant's
intestate on an implied contract, evidence by plaintiff that she
supported herself by raising and selling chickens and selling
eggs and milk, and that deceased knew of such matters, was
entirely immaterial and harmless to defendant, so that denial
of a motion to strike out, based on the ground that it related
to matters within the knowledge of deceased, was, if error,
harmless.

**5. Statute of Limitations: Error in Admission of Evidence
Cured by Verdict.**

In an action on an implied contract for services extending over a
period commencing outside the statute of limitation, any error
which may have been committed in admitting evidence as to

25 Utah—13

services claimed to have been barred, or by the refusal of instructions relating thereto, was rectified by the verdict, which expressly limited the recovery to the period within the statute.

6. **Refusal to Give Instructions: Sufficiency of Record to Review.**

Where the record fails to disclose what instructions were in fact given, the Supreme Court can not review the refusal of the court to give those which were requested.

7. **Findings: Verdict: Not Disturbed When.**

Where there is any evidence to support a verdict or a finding of the court, or where the evidence is conflicting, the Supreme Court will not disturb such verdict or set aside such finding.[1]

9. **Cost Bill: What to Contain.**

Revised Statutes, section 994, provides that a witness legally required to attend court is entitled to his fees only for each day's "attendance," and mileage for the distance "actually and necessarily" traveled, in going only. By statute, costs may, within reasonable limits, be taxed for witness subpoenaed in good faith, though not sworn, and a party may serve his own subpoena, and need not file the return until after the time limited for objections to the cost bill. *Held,* that the cost bill should enable the losing party to determine who the witnesses are, where they reside, where they were subpoenaed, how many days they claim attendance upon court, and the number of miles actually traveled by them in obedience to a subpoena or the request of the successful party.[2]

8. **Same: Insufficient.**

A cost bill in which the name of each witness and his place of residence were followed merely by certain figures in two columns, one designated "Days," and the other "Mileage," and by the total amount claimed by the witness, was wholly insufficient, as not advising the other party where the witnesses were subpoenaed, if at all, how many days each were in attendance, or how many miles each traveled in going only.

(Decided December 10, 1902.)

Appeal from the First District Court, Cache County.—
*Hon. Charles H. Hart,* Judge.

[1]Slater v. Cragan, 7 Utah 412, 27 Pac. 4.
[2]Cole v. Ducheneau, 13 Utah 42, 44 Pac. 92.

Action to recover a certain sum alleged to be due upon an implied contract for the furnishing of certain goods and also for certain services rendered by plaintiff to defendant's intestate. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED (*with modified cost bill*).

*Frank K. Nebeker, Esq.,* for appellant.

It is a fundamental and generally recognized principle of pleading and practice that where the action is brought on the common count for work and labor, evidence of an express contract is inadmissible. "Where there has been a special contract as to both the nature and character of the services and the price to be paid, if the plaintiff rely upon the contract, he must declare on it and its breach specially, not on the common counts in assumpsit." 2 Enc. Pl. and Pr., p. 1012, note; Tate v. Tarcautt, 58 N. W. 993; Andrews v. Hardin, 32 Mich. 324; Moore v. Nason, 48 Mich. 300; Walker v. Bietry, 24 La. Ann. 349; Gill v. Vogler, 52 Md. 663; Wilder v. Colby, 134 Mass. 377; Phelps v. Hubbard, 59 Ill. 79.

The law is well settled that a person may not recover for mere courtesies extended to another—too well settled to require the citation of authorities. "There can be no recovery for services rendered voluntarily and with no expectation at the time of the rendition that they will be compensated." 15 Am. Eng. Enc. of Law (2 Ed.), 1079; Collyer v. Collyer, 113 N. Y. 442; Doyle v. Trinity Church, 133 N. Y. 372; Force v. Haynes, 17 N. J. L. 385; Woods v. Ayres, 39 Mich. 345; Allen v. Bryson, 67 Iowa 591; Goode v. U. S., 55 Ct. C. 261.

And such is the rule even if the party performing the service subsequently changes his intention. Moore v. Moore, 3 Abb. App. Dec. 303; Hart v. Hart, 41 Mo. 441; Ayland v. Rice, 23 La. Ann. 75.

The rule remains the same where the services were performed with an expectation of reward by will or otherwise based upon the generosity of the recipient.   Myles v. Myles, 6 Bush. (Ky.) 243; Tilghman v. Lewis, 8 La. Ann. 108; Brown v. Tuttle, 80 Me. 162; Collyer v. Collyer, 113 N. Y. 442; Houck v. Houck, 99 Pa. St. 552.

Where services are rendered, even upon request, by one person to another living in the family relation, as one household, such services are presumed to be gratuitous.   15 Am. Eng. Enc. of Law (2 Ed.), 1083-4; Cautine v. Phillips, 5 Harr. (Del.) 428; Hudson v. Hudson, 90 Ga. 581; Hill v. Hill, 121 Ind. 255; Van Sandt v. Cramer, 60 Iowa 424; Cowan v. Musgrave, 73 Iowa 384; Holmes v. Waldron, 85 Me. 312; Bixler and Sellman, 77 Md. 494; Gallagher v. Vought, 8 Hun (N. Y.) 327; Wilcox v. Wilcox, 48 Barb. (N. Y.) 327; Wilkes v. Cornelius, 21 Or. 341; Ellis v. Cary, 74 Wis. 176.

The rule applies equally to persons not related at all, provided, they live together as members of one family.   15 Am. Eng. Enc. of Law (2 Ed.), 1084; Windland v. Deeds, 44 Iowa 98; Copper v. Cooper, 147 Mass. 378; Ryan v. Lynch, 9 Mo. App. 18; Desbrow v. Durand, 54 N. J. L. 343; Doremus v. Lott, 49 Hun (N. Y.) 284.

*George Q. Rich, Esq.,* for respondent.

We submit that there has been no proof of an express contract.   The rule contended for by the appellant doubtless is that where the parties have mutually agreed upon certain terms and conditions in a contractual capacity, conditions which the law would otherwise imply, are in a measure at least merged into the express contract and should be so treated.   The so-called express contract did not fix the value of the services, therefore, a recovery would have to be had, if at all, upon the reasonable value of the services.   The testimony in regard to making the will should be considered

simply as indicating that the services were intended not to be gratuitous. The agreement (if any) relied upon simply provided for the payment of a reasonable value in a certain manner that has not and can not be complied with.

### STATEMENT OF FACTS.

Plaintiff sues defendant for the recovery of $1,200, alleged to be due upon an implied contract for the furnishing of certain goods, and also for certain services rendered by plaintiff to defendant's intestate. The complaint alleges that "during all of the times between the twenty-eighth day of October, 1892, and the death of John T. Garr, on or about the thirty-first day of October, 1900, at Cache county, Utah, the plaintiff, at the special instance and request of said deceased, performed and rendered to him her personal services in keeping his house cleanly and in order, including the making of his bed, patching, mending, and otherwise caring for his clothes and personal chattels, and in furnishing fuel and light for his room, and in nursing him, and in preparing for him occasionally at intervals during said period his meals, and furnishing the same, and in performing for said decedent during the whole of said period general duties as his housekeeper." Defendant, in his answer, denies the allegations of the complaint generally, but admits that during said period from the twenty-eighth day of October, 1892, to the thirty-first day of October, 1900, plaintiff may have performed, in a few instances, slight and incidental services for said decedent, but defendant alleges that during the whole of said times said decedent permitted plaintiff and her family to occupy a house and lot owned by decedent, without any remuneration therefor, except such slight and incidental services as plaintiff during said times may have performed for decedent; that, if plaintiff performed any services for said decedent, she did not do so with the intention of charging therefor, but as partial remuneration for the use of said premises,

and said decedent understood that plaintiff was not to be paid for any such services. Defendant also pleads the statute of limitations against so much of the cause of action as relates to the period between October 28, 1892, and October 31, 1896. The evidence introduced in the cause disclosed that plaintiff's deceased husband and defendant's intestate had been intimately associated for a number of years; the defendant's intestate, who was an old bachelor, having reared plaintiff's husband from the latter's early childhood. After the marriage of plaintiff and her husband, defendant's intestate requested them to "come and stop down to my place and take care of me." They complied with the request, and moved into a house belonging to decedent, and in which the latter occupied a single room, which room he still continued to occupy until his death, for sleeping purposes. At all times, both before and after plaintiff's removal, decedent regularly boarded at another place, where, also, the principal part of his washing and mending was done. Up to the death of defendant's intestate, plaintiff kept the house clean, made beds, kept fires, furnished him with fuel and light, furnished and prepared him occasional meals, and waited on him when he was ill. The house was occupied by plaintiff and her family rent free, and deceased also furnished some of the fuel; hauling willows and chopping them for the benefit of them all. Plaintiff had some thirty head of cattle, for which deceased furnished winter feed, while, upon the other hand, during part of the time deceased used plaintiff's ranch in the mountains, as well as receiving the increase of plaintiff's cattle. The lot belonging to the house was cultivated by deceased, but the products were used by plaintiff and her family. In March, 1896, plaintiff's husband died, leaving plaintiff and her four children in the occupation of the house; and shortly thereafter the deceased told plaintiff, in the presence of other parties, "that, if she would stay there with him and take care of him, he would pay her for all that she had ever done or would do for him." Plaintiff's brothers,

who objected to the associates of decedent, protested against her staying, notwithstanding which, however, plaintiff remained with decedent until his death. The relations between deceased and plaintiff were very friendly; deceased seemingly being the head of the household, and plaintiff his housekeeper. It further appears in evidence that deceased at one time agreed to make a will in favor of plaintiff and her children. This, however, was not done. During the trial, plaintiff herself testified that while living with deceased she supported herself by selling produce, and that deceased knew how she supported herself. At the close of the trial, defendant requested the following instructions, which were refused: "The court instructs you that plaintiff can not recover in this action for any service performed by her for, or fuel or light furnished to, John T. Garr, deceased, between the twenty-eighth day of October, 1892, and the thirty-first day of October, 1896; and you are further instructed that you can not consider any such service, or such fuel or light, or the value thereof, in estimating the amount, if anything, to which the plaintiff is entitled in this action." "The court instructs you that if you find that John T. Garr, in his lifetime, promised to remunerate plaintiff for any service performed by her for him, and you further find that plaintiff performed services for said John T. Garr, but did so believing that said John T. Garr would make a will, and thereby provide remuneration for such services, and that plaintiff performed said services relying upon and with the hope of reward based upon such promise or agreement of said John T. Garr, your verdict should be for defendant and against plaintiff." A verdict for $500 was rendered in favor of plaintiff, and thereafter defendant moved for a new trial upon the following grounds: (1) Excessive damages; (2) insufficiency of the evidence to justify the verdict, and that the verdict is against law; (3) errors in law occurring at the trial. The motion for a new trial was denied, and defend-

ant appeals both from the order refusing such new trial, and from the judgment rendered upon the verdict.

ROLAPP, District Judge, after stating the facts, delivered the opinion of the court.

The errors assigned upon this appeal are (1) the admission of certain evidence; (2) the refusal of the court to give the requested instructions; and (3) the insufficiency of the evidence to justify the verdict.

We shall first consider the alleged errors relating to the admission of evidence:

Upon the trial, one Hyrum Hulse, a witness for plaintiff, upon his direct examination testified, among other things, that the deceased, after making the statement to plaintiff that "he would pay her for all she had ever done or would do for him," further asserted that "he would make out a will to her and her children." While no objection was made to this testimony at the time it was given, yet, after the close of the cross-examination, counsel for the appellant moved to strike out certain testimony of the witness relating to this and other promises made by deceased to plaintiff, on the ground that the action is upon the common count, and not upon express contract. This motion was denied by the court, and we think properly. In the first place the objection was not made seasonably, and, besides, the objection is untenable, because there was nothing in the testimony that tended to show an express contract. The assertion by deceased that he would make a will in favor of plaintiff and her children was wholly consistent with, and yet foreign to, the other statement made; and, while the statement was immaterial, yet it did not in any way tend to establish an express contract. In no case is an express contract established by a mere statement that one person will pay another for what he will do for him. Before there can be an express contract as to services, it is necessary that both the character of the services and the price to be paid shall be

agreed upon between the parties.  In other words, an express
contract is one whose terms are fully declared by the parties
at the time they enter into it.  2 Bl. Comm., 443.  When such
terms are not declared, it becomes an implied contract.
Hertzog v. Hertzog, 29 Pa. 465.

Appellant also contends that the court erred in refus-
ing to strike out the testimony of one of plaintiff's witnesses
as to the value of the services rendered.  While it is
true that the evidence is not very clear as to the qualifica-
tions possessed by the witness which entitled him to
testify as an expert upon the value of the services rendered
and the goods furnished, yet in any case where there is some
evidence tending to establish such qualifications, and the wit-
ness is considered competent by the trial judge, and in the
absence of a showing that the court's discretion has been
abused, we will not, upon appeal, reverse the decision of
the trial court in this respect.  Whether a witness is qualified
to testify as an expert is a question of fact for the presiding
judge, and, if supported by any evidence, will not be reversed
on appeal.  Rog. Exp. Test., sec. 22; 2 Jones, Ev., 371;
State v. Cole, 63 Iowa 695, 17 N. W. 183.

Appellant further contends that the whole of plaintiff's
own testimony should have been stricken out, and that the
refusal of the court to do so was error.  The only testi-
mony given by plaintiff was to the effect that during the
lifetime of deceased she supported herself by raising and
selling chickens and selling eggs and milk.  She further tes-
tified that the deceased knew all about these matters.  The
motion to strike out was upon the ground that this testimony
related to a matter of fact equally within the knowledge of
deceased and the witness.  While we think it a very dangerous
practice to permit an adverse party to testify in any case
defended by the representative of the deceased person, yet
in this case we think that, even if erroneously admitted, no
prejudice resulted to defendant from the presence of this
testimony in the record.  It related to a matter which not

even remotely affected the issues before the court, and doubtless, if objection had been made to its materiality and relevancy, it would have been promptly stricken from the record.

Complaint is also made that error was committed in not confining the testimony to facts subsequent to the thirty-first day of October, 1896, the remainder of plaintiff's cause of action being barred by the statute of limitations, and also that the court refused to give defendant's request No. 1, above stated, relating to the same subject-matter. While we observe nothing in the record relating to events happening prior to Ooctober 31, 1896, which could in any way prejudice defendant, yet we think that any possible errors which may have occurred in this respect were cured by the verdict, which in express terms limits the recovery to the period between October 31, 1896, and October 31, 1900.

So far as the refusal of the court to give the instructions requested by defendant is concerned, we can not, upon this appeal, review that action, because the record fails to disclose what instructions were in fact given; and, in the absence of such information, we must presume that the court below did its duty, and gave general instructions correctly and fully covering the entire law of the case, including so much of the statements of law as was properly stated in the refused requests. Lower v. Franks, 115 Ind. 334, 17 N. E. 630.

Nor can we consider the assignment of error that the evidence was insufficient to justify the verdict. We have repeatedly held that where there is some evidence to support a verdict or the findings of the court, or where the evidence is conflicting, we will not disturb such verdict or set aside such finding. To this doctrine we still adhere. Slater v. Cragan, 7 Utah 412, 27 Pac. 4.

Appellant also raises the point that the court erred in refusing to strike from the memorandum of costs the items of witness' fees therein mentioned. In this case the cost bill simply stated the names of the witnesses and

their places of residence, in addition to which the figure "3" was set opposite each name, under a column designated "Days," and the figure "6" under a colunm designated "Mileage," together with the total amount claimed by each witness. The memorandum contained no information which advised the adverse party as to what "days" and "mileage" these words had reference. Such cost bill is wholly insufficient. With the latitude given by the laws of this State, permitting a party, within reasonable limits, to tax costs for witnesses subpoenaed by him in good faith, although not sworn in the case, and with the further permission granted to a party to serve his own subpoena and file the return at any time he chooses, we think it only fair to the adverse party that at least a sufficient showing should be made upon the face of the cost bill to enable such party to ascertain therefrom who the witnesses are, where they reside, where they were subpoenaed, how many days they claim to have been in attendance upon court, and the number of miles actually traveled by them in obedience to a subpoena or the request of the successful party. The reason for such strict compliance with this rule is obvious. Section 994, Revised Statutes, provides that "every witness legally required to attend upon the district court or a grand jury is entitled to one dollar and fifty cents for each day's attendance, and twenty cents for each mile actually and necessarily traveled, in going only." This does not mean that a mere bystander used as a witness can receive mileage from his place of residence, or that a witness is entitled to per diem while coming to or going from court. It means just what is says—that he shall receive per diem for each day's attendance, and mileage for each mile actually and necessarily traveled, in going only. If a bystander be called as a witness, and he traveled thirty miles to return to his place of residence, that fact would not entitle a successful party to tax his mileage against his adversary; and as no statute requires the returned subpoena to be filed within the time limited for objections to cost bills,

and as in the majority of cases the subpoenas are served by the parties or their friends, we think the cost bill should, upon its face, fully state the facts, so that if they are not true they may be controverted by the adverse party within the time allowed by law. There is nothing in the cost bill in this case which shows where the witnesses were subpoenaed, if at all; nor how many days each witness was in actual attendance upon the court, or the distance which such witness actually and necessarily traveled in going only. It is quite possible that these witnesses may have been mere bystanders at the trial; they may have counted and taxed traveling fees both ways, or the distance traveled may have been estimated from some other point than where they resided or were subpoenaed, or they may have computed a distance which they either not actually or not necessarily traveled. Cole v. Ducheneau, 13 Utah 42, 44 Pac. 92.

We think the judgment of the lower court as to the main cause should be affirmed, with costs against appellant, except as herein otherwise stated, and, further, that the cause should be remanded to the lower court, with instructions to strike from the cost bill all the witness fees therein contained. It is so ordered.

BASKIN and BARTCH, JJ., concur.