[L. A. No. 8519.   In Bank.—July 29, 1925.]

# DOMINGUEZ LAND CORPORATION (a Corporation), Petitioner, v. EDWIN M. DAUGHERTY, Commissioner of Corporations, etc., ·Respondent.

[1] CORPORATIONS—PURCHASE OF PROPERTY WITH STOCK—EQUALITY OF VALUES—GOOD FAITH—CONSTITUTIONAL LAW.—In so far as the stockholders of corporations are concerned, section 11 of article XII of the state constitution is not to be so rigidly construed as to forbid corporations formed for commercial purposes from issuing their stock for the purchase of property, the value of which does not bear an exact equality with the par value of the stock itself, and so long as the corporation and its officials are acting in good faith in the issuance and transmutation of its stock into money or property which is to become, in whole or in part, the actual capital of the corporation, and so long as such property so taken in exchange for its said stock possesses a sufficient although undetermined valuable consideration to support such transfer, the transaction will not be held to be obnoxious to said constitutional provision.

[2] ID.—RELATION BETWEEN ACTUAL AND STOCK CAPITALIZATION.—The question as to whether the transaction of corporations affecting the relation between their actual and their stock capitalization is not a mere question of law, to be determined by an inspection of the organic law, but is in most cases a mixed question of law and fact, to be determined after a consideration of the facts of each individual case.

[3] ID.—DISTRIBUTION OF CAPITAL ASSETS TO STOCKHOLDERS—VIOLATION OF CONSTITUTION.—The proposition of a capital stock corporation to distribute some portion of its capital assets among its stockholders, after a reduction of its stock capitalization has been regularly and lawfully accomplished, does not necessarily and of itself constitute a violation of section 11 of article XII of the state constitution.

[4] ID. — CAPITALIZATION OF CORPORATIONS — REGULATION BY LEGISLATURE.—The legislature has not, by virtue of the provisions of section 11 of article XII of the state constitution or otherwise, been deprived of power to properly prescribe and regulate the terms and conditions upon which corporations may exercise their limited right to deal with their capital assets, and as well with the amount and value of the stock capitalization of such corporations in relation to their capital assets.

[5] ID.—RIGHTS OF CREDITORS AND STOCKHOLDERS—CREATION OF SPECIAL TRIBUNAL—CONSTITUTIONAL LAW.—The legislature may provide for

an officer or tribunal invested with judicial or *quasi*-judicial powers to entertain, hear, and determine certain matters relative to the exercise on the part of corporations of the right or privilege of effectuating an increase, diminution, investment, and disposition of their capital stock and also of their actual capital, having due regard to the rights of both their stockholders and their creditors and to the protection to which each is entitled under the provisions of the state constitution.

[6] ID.—REDUCTION OF CAPITAL STOCK—DISTRIBUTION OF SURPLUS TO STOCKHOLDERS — DUTY OF CORPORATION COMMISSIONER TO HEAR APPLICATION.—It was the duty of the Commissioner of Corporations, under the provisions of the Corporate Securities Act and section 309 of the Civil Code, to entertain, file, consider, and determine petitioner's application for permission to distribute to its shareholders a specified sum out of its surplus money and property on hand, which surplus had been created by the act of petitioner in reducing its capital stock by reducing the par valuation of its shares, which said reduction in the par valuation of its shares had been accomplished under and in pursuance of the provisions of sections 309 and 359 of the Civil Code, and after compliance with the requirements of law as therein provided.

(1) 14 C. J., p. 432, n. 66, p. 446, n. 86.    (2) 14 C. J., p. 441, n. 66 New, p. 500, n. 28, p. 501, n. 31.    (3) 14 C. J., p. 501, n. 31 New.    (4) 14 C. J., p. 393, n. 26 New.    (5) 12 C. J., p. 847, n. 2. (6) 14 C. J., p. 501, n. 31 New.

PROCEEDING in Mandamus to compel the Commissioner of Corporations to consider and act upon petitioner's application to distribute surplus to its stockholders.    Writ issued.

The facts are stated in the opinion of the court.

James S. Bennett for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

RICHARDS, J.—The petitioner herein seeks by writ of mandate to compel the respondent as Commissioner of Corporations of the state of California to file and assume jurisdiction over the petitioner's application for permission to distribute to its shareholders the sum of $415,000 out of its surplus money and property on hand, which surplus has been created by the act of the petitioner Corporation in reducing its capital stock from the sum of $2,000,000, divided

into 20,000 shares of the par value of $100 each, to the sum of $1,000,000, divided into 20,000 shares of the par value of $50 each, which said reduction in the par valuation of its shares of capital stock had been accomplished under and in pursuance of the provisions of sections 309 and 359 of the Civil Code, and after compliance with the requirements of law as therein provided. The respondent herein has refused to accept for filing the petitioner's said application for permission to so distribute the said amount of its said surplus thus created or to permit the same to be filed in his office and has refused to take or exercise jurisdiction over the same, basing his said refusal upon the advice of the attorney-general to the effect that said respondent in his capacity of Commissioner of Corporations has no jurisdiction under the provisions of section 309 of the Civil Code, or of any other law, to receive or file or consider or grant any such application; and that in so far as said section of the Civil Code or any other statute of the state of California purports to confer such jurisdiction, it is void as in conflict with section 11 of article XII of the state constitution. In basing his refusal to receive, file, or consider the petitioner's said application the respondent, by his return to the alternative writ issued herein, admits the facts set forth in the petition herein, which affirmatively show that if the petitioner's said application were to be permitted to be filed and considered and the permit applied for therein granted and the distribution of such surplus made as sought, the petitioner would still have sufficient remaining assets to more than equal in value its reduced stock capitalization and also to largely exceed all of its outstanding obligations. The respondent does not question either the truth of the petitioner's said allegations or its entire good faith in seeking the distribution to its shareholders of its said surplus derived from the aforesaid source. We are not, therefore, in this proceeding confronted with any question involving the exercise of discretion on the part of the respondent in his capacity of commissioner of corporations as to whether, upon the facts stated in the application or to be produced upon a hearing before him thereon, such an application should be granted or denied, the sole question for our determination being as to whether in any case a corporation organized or doing business in and under the laws of the

state of California can be permitted to distribute any surplus of its actual capital in the form of money or property on hand, other than earned profits, to its shareholders, in view of the inhibitions, if any, in the section and article of the constitution upon which the respondent bases his refusal to file or consider the petitioner's said application. Section 11 of article XII of the state constitution provides as follows: "No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void. The stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock, at a meeting called for that purpose, giving sixty days' public notice, as may be provided by law." It is to be observed that the foregoing provision of the constitution does not in express terms forbid corporations from distributing among their shareholders any surplus money or property of which they may come into possession. If it does it does so by indirection under and by virtue of the first clause in the constitutional provision above set forth. The respondent supports his contention that such is its effect by reference to the like earlier provisions in the constitutions of certain other states from which the said provision in our constitution of 1879 . was obviously taken, and to the debates in the constitutional convention attending the adoption of said provision. He also refers to certain cases decided by the courts of last resort in said other jurisdictions which, as he contends, upholds his interpretation of the terms of our own constitution. There does not seem to be much doubt that it was the intent of the framers of our said constitution in adopting said provision to provide that a relation of values when once created between the stock capitalization of a corporation and its actual capital in the form of money or property or both should be maintained to the extent, at least, of requiring good faith on the part of the corporation and its governing officials in the issuance of its stock for a valuable consideration in the form of either money or property; and that a like good faith should be exacted on its part and on the part of its officials with regard to any such increase either in its stock capitalization or in its indebtedness, which

would materially disturb the established relation between its capital stock and its actual capital in the form of money or property to the extent of impairing the respective rights of its stockholders and its creditors to have such established relation maintained. But the respondent herein goes to the extent of claiming that the inhibitions of the aforesaid section and article of the state constitution are absolute and are to that fullness of extent to be applied to the instant case. To put the respondent's interpretation of said section and article of the constitution in his own words, he says: "On its face it relates only to the issuance of stock and bonds and prohibits such issue except for value received therefor by the corporation. But it has a far deeper significance. It means not only that interests or shares in a corporation shall not be created except for value received by the corporation, that the condition shall not arise of there being issued shares of stock without the corporation receiving value as against such stock so issued, but also that such interests or shares having been created, and value received by the corporation therefor, that or equivalent value is always to remain with the corporation while those interests or shares are outstanding. It was intended thereby to benefit the corporation by securing to it capital in return for all interests created in its assets and affairs, preventing anyone from sharing in those assets unless the corporation had received some valuable consideration for his interest therein. Likewise it was intended thereby to benefit those stockholders who had paid value to the corporation for their shares by preventing the depreciation of the value of their interest in the corporation which would result if others were to be allowed to share in those assets without the corporation receiving value for the interests thus created. And finally it was intended thereby to create a fund for the benefit of creditors of the corporation so that in the course of its life its assets might not be withdrawn by the shareholders, after obligations had been incurred upon the faith of the ownership of those assets, without first taking care of those creditors." In dealing with the foregoing contention of the respondent herein we may conveniently do so first from the standpoint of the stockholders of the corporation, in order to determine what their constitutional rights are to have the relation between the actual and the stock capitaliza-

tion of their corporation rigidly established and inexorably maintained. This subject has been before this court in various forms and in a number of well-considered cases in which it may be noted this court has quoted and referred to the decisions of the courts of certain of those states from the constitutions of which the aforesaid provision in our own constitution was taken. The first case arising after the adoption of the constitution of 1879 and coming to this court on appeal was *Stein* v. *Howard,* 65 Cal. 616 [4 Pac. 662], wherein a stockholder undertook to enjoin the trustees of the Spring Valley Water Company, a corporation, from issuing and selling 20,000 shares of its capital stock for a price much below the par value of its stock capitalization and from providing that its stockholders might purchase said stock proportionately to their previous holdings at such reduced price. It was contended that such a transaction fell within the inhibition° of section 11 of article XII of the constitution, and particularly of the portion thereof above set forth. This court, however, held that the transaction in question did not come within the inhibitions of said section and article of the constitution. In the case of *Garretson* v. *Pacific Crude Oil Co.,* 146 Cal. 184 [79 Pac. 838], the plaintiff, a stockholder of the defendant corporation, brought suit against it and certain other stockholders to have canceled certain issues of corporate stock of a par valuation of one dollar per share to the latter named stockholders in payment for certain oil leases of very much less valuation than the par value of said stock. This court held that the transaction was one conducted in good faith on the part of the corporation and that this being so and the stock having been issued for a valuable consideration and having been consummated through proceedings duly had by and entered upon the books of the corporation, the plaintiff could not be heard to complain. In the case of *O'Dea* v. *Hollywood Cemetery Assn.,* 154 Cal. 55 [97 Pac. 1], this court, upon the suit of a stockholder, held valid a contract whereby the stock of a corporation was issued for property of less value than the nominal or par value of such corporate stock, upon the ground that the directors of a corporation having in good faith issued its fully paid up stock for the purchase of such property, the action of the corporation by its stockholders could not be questioned, nor the validity of the issue

assailed on the ground that the consideration received was
inadequate. The case of *McKee* v. *Title Ins. Co.*, 159 Cal.
206 et seq. [113 Pac. 140], is a leading and instructive au-
thority upon the subject under review. In that case the
plaintiff in his capacity as a stockholder of the Wentworth
Hotel Company, a corporation, brought suit to have a trans-
action set aside wherein 275,000 shares of the capital stock
of said corporation and also the bonds thereof of the face
value of $275,000 had been issued and delivered over for a
single consideration of $275,000. The transaction was
assailed as in violation of section 11 of article XII of the
constitution. This court in upholding said transaction di-
rected attention to the fact that the case was practically
identical as to its facts with the case of *Memphis etc. R. R.
Co.* v. *Dow*, 120 U. S. 299 [30 L. Ed. 595, 7 Sup. Ct. Rep.
482, see, also, Rose's U. S. Notes], wherein the provisions of
the Arkansas constitution from which the identical provision
in our own constitution had been taken were interpreted.
After showing the substantial identity of the two cases this
court approvingly quoted from the cited case the portion of
the opinion therein wherein that court said that the constitu-
tional provision in question "does not necessarily indicate a
purpose to make the validity of every issue of stock or bonds
by a private corporation depend upon the inquiry whether
the money, property, or labor actually received therefor was
of equal value in the market with the stock or bonds so
issued. It is not clear, from the words used, that the
framers of that instrument intended to restrict private
corporations—at least when acting with the approval of
their stockholders—in the exchange of their stock or bonds
for money, property or labor, upon such terms as they deem
proper, provided, always, the transaction is a real one,
based upon a present consideration, and having reference
to legitimate corporate purposes, and is not a mere device
to evade the law and accomplish that which is forbidden.
. . . There was, consequently no fictitious increase by ap-
pellant of its stock or indebtedness. Under these circum-
stances it cannot be fairly said that the bonds secured by
the mortgage were issued without any consideration what-
ever actually received in property."

[1] The foregoing review of the cases above referred to
will suffice to show that in so far as the stockholders of

corporations are concerned, the constitutional provision here under review is not to be so rigidly construed as to forbid corporations formed for commercial purposes from issuing their stock for the purchase of property, the valuation of which does not bear an exact equality with the par value of the stock itself, and that so long as the corporation and its officials are acting in good faith in the issuance and transmutation of its stock into money or property which is to become, in whole or in part, the actual capital of the corporation, and so long as such property so taken in exchange for its said stock possesses a sufficient although undetermined valuable consideration to support such transfer, the transaction will not be held to be obnoxious to the said provision in the state constitution. In the case of *California Trona Co.* v. *Wilkinson,* 20 Cal. App. 694 [130 Pac. 190], the question of the application of section 11 of article XII of the constitution to a transaction of a corporation involving the issuance and transfer of its stock for a consideration less than the par value thereof, but in good faith and without the indicia of fraud, was involved. In a quite exhaustive consideration of the subject, wherein the authorities of this and other jurisdictions having similar constitutional provisions were quite fully reviewed, the consensus of the cases considered was thus stated by the court: "The purpose of those provisions of the constitution is, of course, to preserve at all times the property of the corporation and thus protect and maintain the rights of the creditors and stockholders thereof as against any such manipulation or disposal of the capital stock by the owners of a majority of such stock as might result in the serious impairment if not the complete destruction of the rights of such creditors and the minority stockholders—a situation which experience shows could easily be brought about if the law were otherwise than as laid down by the provisions of the constitution above quoted. In other words, the design of said provisions is, among other things, to prevent the corporate stock of a corporation from being transferred or disposed of by it without a sufficient consideration, either in the form of money, or property or labor performed for it. But by this we are not to be understood as meaning a consideration equal in value with the stock, for we do not think that the constitutional inhibition invoked here requires such a consideration to render

valid the issue of stock by a corporation. If there is a consideration of some sort and the transaction is one intended to redound to the benefit of the corporation in the prosecution of its corporate purposes, then we should say that, so far as are concerned the requirements of the law in that regard, the consideration is sufficient, and, in a sense, adequate, although it may not be equal in value to that of the stock.''

Turning now to the question as to the rights of the creditors of commercial corporations to invoke the inhibitions of the said section and article of the constitution against transactions on the part of corporations of a similar character to those involved in the foregoing cases, we find that a like liberality of interpretation prevails. It will not be necessary to review the considerable number of cases developing this principle, since in the case of *Lucey Co.* v. *McMullen,* 178 Cal. 425 [173 Pac. 1000], the former decisions of this court upon the subject are fully reviewed, with the result of holding that a corporation was not prohibited by the provisions of section 11 of article XII of the constitution from engaging in good faith in a transaction wherein it issues its fully paid-up capital stock for a consideration of undetermined value but less than the par value of said stock, where the transaction was not tinged with fraud or bad faith on the part of those who were parties to it; and that in an action on the part of the creditors of the corporation to have recourse against those taking such stock under such circumstances, no such cause of action existed in the absence of averments and proof showing actual or inferable fraud in the transaction and that the consideration for the issuance of said stock was not equal to its full actual value at the time of its issuance and transfer. In the quite recent case of *Rhode* v. *Dock-Hop Co.,* 184 Cal. 379 [12 A. L. R. 437, 194 Pac. 11], the subject was again quite fully considered and the doctrine laid down in *Garretson* v. *Pacific Crude Oil Co., supra,* with relation to stockholders of corporations, was given application to suits by creditors assailing similar transactions. When we turn from these parallel lines of decision in this state to the decisions by the courts of other jurisdictions interpreting and applying the provisions of those other state constitutions which are identical or similar to the like provisions in our own constitution here under

review, we find much confusion if not conflict in the varying views of these courts. This conflict and seeming confusion in these decided cases from different jurisdictions in a large measure disappear when the views expressed by the courts are read in connection with the facts of each individual case. This is well illustrated by the case of *Coquard* v. *St. Louis Cotton Compress Co.* (Mo.), 7 S. W. 176, from which the respondent quotes copiously and upon which he strongly relies. The facts in that case disclose a transaction which would not have passed muster under the rules of interpretation laid down by our own decisions with respect to the scope and limitations of our constitutional provision, which is identical in language with that of the state of Missouri. [2] It may be said in this connection as having an important bearing upon the respondent's contention in the instant case that the seeming confusion and conflict in these decisions aptly illustrate the proposition that the question as to whether the transaction of corporations affecting the relation between their actual and their stock capitalization is not a mere question of law, to be determined by an inspection of the organic law, but is in most cases a mixed question of law and fact, to be determined after a consideration of the facts of each individual case. Looking to decisions of the courts of other jurisdictions as a whole there are certain leading cases which stand forth and commend themselves by the fullness and clarity of their reasoning to our approval, and which are in harmony with the decisions of this court upon the immediate matter in hand. Among the earlier of these cases was that of *Peoria etc. R. R. Co.* v. *Thompson,* 103 Ill. 187, wherein the direct question was involved as to whether the provisions of the Illinois constitution, substantially identical with those of our own organic law in the above respect, should be so construed as to prohibit an issue of the stock and bonds of a railroad corporation at less than their face value in good faith and for the purpose of procuring money wherewith to carry on the work of constructing the railroad. The court held that such was not the intention of the framers of the constitution. In the quite recent case of *People* v. *Union etc. El. Ry. Co.,* 263 Ill. 32 [Ann. Cas. 1915C, 388, 105 N. E. 12], the supreme court of that state reaffirmed the doctrine laid down in its earlier decision and gave it the same application to a

suit on behalf of creditors, invoking the constitutional in-
hibition against similar transactions without an affirmative
showing on their part that the stock or bond issue in ques-
tion was fictitious to the extent of being fraudulent.   In so
doing the court quoted with approval the language of the
United States supreme court in the case of *Memphis etc.
R. R. Co.* v. *Dow, supra,* interpreting the said provision of
the constitution of Arkansas and applying the same to the
like provision in the Illinois constitution as follows: ''The
prohibition against the issuing of stock or bonds except for
money or property actually received or labor done and
against the fictitious increase of stock or indebtedness was
intended to protect stockholders against spoliation, and to
guard the public against securities which were absolutely
worthless. . . . It is not clear from the words used that
the framers of that instrument intended to restrict private
corporations at least when acting with the approval of their
stockholders—in the exchange of their stock or bonds for
money, property or labor upon such terms as they deem
proper, provided always the transaction is a real one based
upon a present consideration having reference to legitimate
corporate purposes and is not a mere device to evade the
law and accomplish that which is forbidden.''   As to the
contention of the respondent herein that the creditors of
corporations have not only an equal but a superior right
to the stockholders thereof to insist upon the strict main-
tenance of the actual capital of the corporation without
diminution or distribution to any extent whatever among
the stockholders based upon the so-called ''Trust Fund doc-
trine,'' that phase of the discussion is quite adequately dealt
with in the decision of the district court of appeal in the case
of *Dominguez Land Corp.* v. *Daugherty,* 45 Cal. App. Dec.
884, which has been adopted by this court in its decision of
said case upon rehearing this day filed (*post,* p. 468 [238 Pac.
703]), and to which reference is hereby made.   The citations
therein made to the decisions of the courts of other jurisdic-
tions touching the right of the creditors of corporations to
notice of or to interference with the action of such corpora-
tions in dealing in good faith and without fraud with their
capital assets show that the prevailing trend of authority upon
this subject is in accord with the decisions of the courts of this
state upon the same subject.   The decisions of the courts of

other jurisdictions have, however, gone much further than the decisions of our own courts thus far rendered, touching the interpretation to be given to the section and article of our state constitution under review, in that they have gone to the full extent of holding that corporations may, when acting in good faith and without fraudulent intent or effect, distribute surplus assets of the corporation among their stockholders without in so doing bringing themselves within the inhibitions of the aforesaid constitutional provisions. These authorities are collated and cited by practically all of the leading text-writers upon the powers and duties of corporations and in which treatises the rule is uniformly stated to the effect that after an authorized reduction of the capital stock of a corporation regularly effected a corporation may distribute among its stockholders such amount of its corporate assets over and above the amount of its capital stock as thus reduced as will leave with the corporation an amount of assets equal to its reduced capital stock in addition to the amount of its debts.    The most modern and also, perhaps, the most precise statement of this doctrine is that contained in the text of Fletcher's Cyclopedia of Corporations, section 3472, wherein it is stated: "When the amount of the capital stock of a corporation is lawfully reduced under legislative authority, the corporation is not required to keep the excess of its actual capital over the amount of its nominal capital as reduced, nor has it any right to do so; but the stockholders have the right to have it divided among them, as in the case of a dividend, in proportion to their shares.    In making such distribution, however, regard must be had to the present value of the property, and the company, instead of distributing money or property equal in value to the excess of the original nominal capital and the reduced nominal capital, must retain property equal in present value to the reduced nominal capital, after deducting its debts.    In other words, the surplus, if any, which a corporation may pay to its stockholders on reducing its capital stock must, in every case, be ascertained, and depends upon the result of an examination into its affairs, and not upon the difference between the original amount of capital stock and the reduced amount.    Where a corporation reduces its capital stock, and the surplus which thereby results is invested in the stock of railroad corporations, the

stock itself may be distributed.  It is not essential that the
stock be reduced to cash and distributed in that form.
Whenever, by sales of property, or by means of earnings, or
otherwise, the corporation comes into possession of funds
which are in excess of the amount of its reduced capital
stock, it can distribute that amount among the stockholders.''
(See, also, Morawetz on Corporations, sec. 443; Cook on
Corporations, sec. 289; Thompson on Corporations, sec. 3670;
14 Corpus Juris, sec. 741.)   [3]  In the light of the de-
cisions of the courts of this state, first above referred to, as
well as of those of other jurisdictions, defining and limiting
the intent of the framers of the aforesaid provisions of our
own and of similar constitutions with relation to the invest-
ment or exchange of corporate capital assets, and in view,
also, of the consensus of opinion of the text-writers last
above set forth and supported by abundant authority, it is
our conclusion that the proposition of a capital stock corpo-
ration to distribute some portion of its capital assets among
its stockholders, after a reduction of its stock capitalization
has been regularly and lawfully accomplished, does not
necessarily and of itself constitute a violation of the section
and article of our state constitution under immediate review
herein.

[4]  From this conclusion it would seem logically and
necessarily to follow that the legislature has not, by virtue
of the aforesaid provisions of our state constitution or other-
wise, been deprived of power to properly prescribe and regu-
late the terms and conditions upon which corporations may
exercise their aforesaid limited right to deal with their capi-
tal assets, and as well with the amount and value of the
stock capitalization of such corporations in relation to their
capital assets.  In the case of *Ewing* v. *Oroville Mining Co.,*
56 Cal. 649, it was held that the provisions of section 11 of
article XII of the constitution of 1879 relating to the in-
crease in the capital stock of corporations was not self-
executing, but, on the contrary, provided for the enactment
of general laws regulating such increase.  Since that early
decision the courts of this state have so uniformly and con-
sistently upheld and enforced the provisions of the Civil
Code enacted prior to 1917, relating to the terms and method
by compliance with which corporations may increase or
diminish their capital stock, that we deem it no longer open
196 Cal.—30

to question as to the power of the legislature in that regard, within the limitations of the foregoing provisions of the constitution as interpreted in those other and later decisions of this court to which reference has above been made.    [5] It may also be said to be beyond question, at least at the instance of this respondent, that the legislature, being invested with the aforesaid power, may provide for an officer or tribunal invested with judicial or *quasi*-judicial powers to entertain, hear, and determine certain matters relative to the exercise on the part of corporations of the right or privilege of effectuating an increase, diminution, investment, and disposition of their capital stock and also of their actual capital, having due regard to the rights of both their stockholders and their creditors and to the protection to which each is entitled under the provisions of the state constitution.    [6]    The Corporate Securities Act (Stats. 1917, p. 673), from which the respondent herein derives his power and is invested with the duties prescribed therein, or with which he has been invested by other statutes, has been held to be constitutional in so far as it purports to invest the Corporation Commissioner with power to investigate the affairs and assets and proposed activities of corporations and thereupon to issue or refuse to issue permits to do business upon a basis which is or is not unfair, unjust, or inequitable, and to issue securities and use methods in disposing of the same according as he shall determine that such transactions are or are not legitimate and lawful (*In re Girard,* 186 Cal. 718 [200 Pac. 593]).    We are brought by the foregoing consideration to the immediate solution before us.    In the year 1917 the legislature adopted certain amendments to section 309 of the Civil Code.    Prior thereto said section provided that: "Sec. 309, Subd. 1.    The directors of corporations must not make dividends except from the surplus profits arising from the business thereof; nor must they create any debts beyond their subscribed capital stock; nor must they divide, withdraw or pay to the stockholders, or any of them, any part of the capital stock except as hereinafter provided, nor reduce or increase the capital stock except as herein specially provided. . . . Nothing herein prohibits a division and distribution of the capital stock of any corporation which remains after the payment of all its debts upon its dissolution or the expiration of its term of

existence.'' By the amendment to said section adopted by
the legislature in 1917 it was, in so far as herein applicable,
made to read as follows: ''Unless they shall have been first
permitted or authorized so to do by the commissioner of
corporations, directors of corporations must not make divi-
dends except from the surplus profits arising from the busi-.
ness thereof; nor must they create any debts beyond their
subscribed capital stock; nor must they divide, withdraw,
or pay to the stockholders, or any of them, any part of the
capital stock, except as hereinafter provided, nor reduce or
increase the capital stock, except as provided in section three
hundred fifty-nine of this code.'' Subsequent to the adop-
tion and taking effect of said amendments to section 309 of
the Civil Code, the petitioner herein presented and offered
for filing with the Commissioner of Corporations, the re-
spondent herein, its application for permission to distribute
to its stockholders $415,000 which it asserted to be a portion
of a surplus of its capital assets arising out of the fact that
it had theretofore, by regularly conducted proceedings under
the provisions of section 359 of the Civil Code as amended
in 1921 [Stats. 1921, p. 127], reduced its stock capitalization
from $2,000,000, divided into 20,000 shares of the par value
of $100 per share, to $1,000,000, divided into 20,000 shares
of the par value of $50 per share. It further alleged that
its actual assets and liabilities as shown by a detailed state-
ment thereof incorporated in its said application were such
that it was possessed of assets in the way of money and
property of a total value of $2,875,015; that its total liabili-
ties amounted to $417,344.70; that it had a surplus of assets
over its present stock capitalization and its liabilities in ex-
cess of $1,000,000, which was no longer necessary or useful
in the ordinary business of the corporation and which
should, therefore, be distributed among the stockholders of
the corporation. The application was verified and was other-
wise in form and substance such an application as would
suffice to give the corporation commissioner jurisdiction to
entertain and consider the same. The refusal of the corpo-
ration commissioner so to do was based solely upon his con-
tention that he was not permitted so to do because of the
inhibitions of section 11 of article XII of the state constitu-
tion. We are satisfied that for the foregoing reasons the
contention of the corporation commissioner in the above re-

spect cannot be upheld; that the transaction which the petitioner, with the permission of the commissioner, proposed to consummate was one which upon the face of its said application and upon the showing made therein did not come within the inhibitions of the constitution upon which the latter relies, and that it was therefore his duty under the provisions of the Corporate Securities Act and of section 309 of the Civil Code to entertain, file, consider, and determine the petitioner's application.

It is therefore ordered that the writ issue as prayed for.

Waste, J., Lawlor, J., Seawell, J., Lennon, J., and Shenk, J., concurred.

Myers, C. J., deeming himself disqualified, did not participate in the foregoing opinion.