(168 App. Div. 192)

WILLIAMS v. McCLAVE et al. (No. 7473.)

(Supreme Court, Appellate Division, First Department. June 18, 1915.)

1. CORPORATIONS ⊙⇒88—STOCK SUBSCRIPTION—VALIDITY.

Stock Corporation Law (Consol. Laws, c. 59) § 55, provides that a corporation may purchase property and issue stock in payment therefor, that the stock so issued shall be full-paid stock not liable to any further call, and that in the absence of fraud the judgment of the directors as to the value of the property purchased shall be conclusive. A new corporation was organized to take over the business of a lumber company, established about 50 years and earning a profit of from $25,000 to $50,000 a year until the occurrence of a general business depression, and pursuant to a family agreement, no stock having been sold or

offered to the public, the widow of the founder of the business subscribed for $149,700 of the $150,000 capital stock of the new corporation, and gave in payment therefor the tangible assets and business of the old company, which assets the court found to exceed the liabilities assumed by the new corporation by nearly $13,000. During the first year the new corporation operated at a profit of more than $12,000, above $12,000 improperly paid to the widow and large salaries paid to the directors. *Held*, that evidence of these facts showed no such fraud in the transaction as rendered the widow liable to account on the stock subscription in a subsequent action by the trustee in bankruptcy of the new corporation, though the business was operated at a loss after the first year.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 337–364, 425–428; Dec. Dig. ☞88.]

2. CORPORATIONS ☞308—OFFICERS—SALARY.

Where the widow was elected vice president of such new corporation, and received a salary without rendering any service therefor, she could be required to account for salary paid her when the company was running at a loss, but not for that paid when it was running at a profit and the payment did not deplete the capital.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. ☞308.]

Appeal from Special Term, New York County.

Action by Alexander S. Williams, as trustee in bankruptcy of the McClave Lumber Company, against Charlotte L. McClave and others. From a judgment for plaintiff (85 Misc. Rep..184, 148 N. Y. Supp. 93), the defendant named appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Wilder, Ewen & Patterson, of New York City (John Ewen, of New York City, of counsel), for appellant.

Weed, Henry & Meyers, of New York City (Richmond Weed, of New York City, of counsel), for respondent.

CLARKE, J. The action is brought by the trustee in bankruptcy of the McClave Lumber Company, under leave of the United States District Court, against the officers and directors thereof, to compel them to account. From the interlocutory judgment, requiring an account, Charlotte L. McClave alone appeals. Mrs. McClave was the vice president and subscriber to 1,497 shares out of 1,500 of the capital stock of the company. She, however, assigned 375 of the shares issued to her to S. Wood McClave, and 374 shares to John McClave, and 1 share to James F. Lynch.

It appears that John McClave started a lumber business in Hoboken and New York in 1861, and had conducted it down to the time of his death on May 9, 1901. The profits of the business during his lifetime were large, in the early '90s reaching as high as $50,000 a year. He regularly drew from the profits of the business from $15,000 to $25,000 a year. At the time of his death and for some time prior thereto he employed his three sons, John, S. Wood, and Charles L. in the business, paying them salaries which at the time of his death were to S.

Wood $5,200, John $3,900, and Charles about $2,000 a year. He left a will by which he left all of his property to his wife, the defendant Charlotte L. McClave, and made her executrix and his two sons, John and S. Wood, executors. The two sons alone qualified. On the death of John McClave, in May, 1901, and up to May 10, 1907, the executors, John and S. Wood, carried on the business as theretofore; each receiving a salary of $5,200, and Charles L. receiving a salary of $2,500. The executors also paid from the profits of the business to their mother, Mrs. McClave, from $8,000 to $12,000 a year; the payment from May, 1906, to May, 1907, being a trifle over $12,000. After the payment of these salaries and the yearly allowance to Mrs. McClave, the business between 1901 and 1907 made a net profit of $10,000.

The court also found: That in the year from May 10, 1904, to May 10, 1905, the operations of said business resulted in a profit over the payments to the members of the family amounting to $5,900; that in the year from May 10, 1905, to May 10, 1906, there was a loss in the sum of about $5,000. That in the year from May 10, 1906, to May 10, 1907, the operations of said business had resulted in a loss of about $12,000. That shortly prior to the 10th of May, 1907, the defendants, the three sons, their mother, and Lynch agreed that a corporation should be formed, with an authorized capital stock of $150,000, par value. That the assets and good will of the business should be transferred to it, and that said corporation should assume the payment of the liabilities thereof, and that $149,700, par value, of the stock should be issued to Mrs. McClave in consideration of said transfer, and 1 share each to the three sons, and that it was further agreed that S. Wood should become president, Mrs. McClave vice president, John treasurer, and Charles secretary; it was also agreed that S. Wood should receive $5,200 per annum as president, John $5,200 as treasurer, and Charles $3,900 as secretary, and that Mrs. McClave should receive a salary as vice president of $12,000 per annum, and that she should perform no services in connection with the business of said corporation, but that her said salary should be paid to and received by her by reason of her interests as sole legatee of John McClave, deceased, in the business conducted by his executors. Thereafter, on the 10th of May, 1907, pursuant to said agreement, articles of incorporation of the McClave Lumber Company were duly filed, and by the certificate Mrs. McClave duly subscribed for 1,497 shares and the three sons for 1 share each. The incorporators organized in pursuance of the agreement. The stockholders elected the directors, and the directors elected the officers and fixed their salaries, and the stock was issued, all as agreed. In 1908, at the annual meeting, the directors and officers were re-elected. That on the 28th of May, 1909, the agreement between the parties was modified, in that the salary of Mrs. McClave should be thereafter reduced to the sum of $9,400 per year, to take effect on and after June 1, 1909, and pursuant thereto a special meeting of the board of directors did so reduce her salary. On September 20, 1909, the board of directors increased the salary of S. Wood as president to $6,750 per year. October 5, 1909, John was removed from the office of treasurer and resigned as director. Lynch was subsequently elected a director. The

complaint was dismissed as to him, because he received no salary and took no part in the transactions; that he was a mere dummy. On the 22d of December, 1909, Christmas gifts were voted and paid out of the funds of the company of $100 each to Mrs. McClave, S. Wood, and Charles. In May, 1910, in pursuance to the agreement, the directors and officers were re-elected. At the annual meeting on that day S. Wood reported that the operations for the year ending May 9, 1909, had shown a net loss on trade of $21,801.13, and for the year ending May 9, 1910, had shown a loss of $6,855.07.

The court further found: That, in and by the agreement hereinbefore stated, the defendants McClave intended to provide for themselves a fixed return from the business of said company, without reference to the profits or losses in its operations, and intended to secure to Mrs. McClave a fixed return from said business by way of salary, which would be an obligation of the company, irrespective of the profits and losses from its operations, and which should be paid to her solely by reason of her interest in the stock thereof and of her ownership in the business transferred to said corporation in exchange for said stock. That by said agreement the defendants intended that the corporation should have a nominal capital stock greater than the value of its assets, for the purpose of obtaining a greater credit from persons dealing with it, and that at all times the business was conducted largely on credit. That said agreement was a fraudulent conspiracy against the lumber company, the corporation to be formed thereunder, and against the creditors of said corporation, and against the plaintiff. That the value or the assets and property of the business conducted by the executors was on the 10th of May, 1907, less than the sum of $150,000 above the liabilities. That the said appraisement of the value of said assets and property made as hereinbefore stated by the board of directors on May 10, 1907, was false and fraudulent, and did not represent the value which said directors in good faith believed the said assets and property to possess, and that they knew said value was excessive, and that they made said appraisement pursuant to an agreement previously made between them, and that the said appraisement was a fraudulent overvaluation of the assets and property to be transferred to said corporation. That the value of the tangible assets transferred was $42,889.50, and the amount of liabilities of the former business assumed by the company was $29,952.42, making a surplus of tangible assets over liabilities received by the company of $12,937.08. That Mrs. McClave has not paid to the company $149,700 subscribed by her for the stock issued to her, either in cash or property or otherwise, and that a large amount thereof remains unpaid. That she received the salary paid to her without any consideration therefor and rendered no services. That the proceeds of the business of the McClave Lumber Company, after payment of the several salaries hereinbefore set forth was as follows:

| | |
|---|---|
| Year ending May 9, 1908, profit | $12,128.28 |
| Year ending May 9, 1909, loss | 22,270.21 |
| Year ending May 9, 1910, loss | 7,798.36 |
| Period ending April 16, 1911, loss | 21,177.88 |

On May 4, 1911, the lumber company was duly adjudicated a bankrupt and the plaintiff was appointed trustee.

The court further found: That the salaries were not earned by said corporation after the first year, but were thereafter paid out of the capital assets, and reduced the same, and thereby reduced the security of persons dealing with said corporation. That the salaries were unreasonable in amount, excessive, and wasteful of the assets, and in excess of the value of the services. That at all times while it was engaged in business the company was indebted to creditors in various amounts as follows:

| | |
|---|---:|
| Date of incorporation | $29,952.42 |
| Year ending May 9, 1908 | 32,497.73 |
| Year ending May 9, 1909 | 52,991.10 |
| Year ending May 9, 1910 | 74,957.19 |
| Period ending April 16, 1911 | 71,015.04 |

That the business failed to earn all the salaries paid to the defendants as aforesaid after the year ending May 10, 1908, and for the period ending April 16, 1911, the business failed to earn any part of the salaries paid above its other expenses of operation. That some time prior to the 16th of April, 1911, the company became insolvent, and the aggregate of all its assets was not then sufficient to pay its debts.

And as conclusions of law it found a fraudulent conspiracy; that the appraisement of May 10, 1907, was fraudulent, excessive, and void; that plaintiff is entitled to an accounting by Mrs. McClave of her proceedings relating to the organization of the company, and the issue of its capital stock, and the payment by her of any amount which may, on such accounting, be found to be unpaid upon her subscription; that she was not entitled to receive any salary, and that plaintiff is entitled to an accounting and payment of the amount found to be due thereon; and also that the other defendants, with the exception of Lynch, account.

[1] It should be borne in mind that Mrs. McClave only appeals. In regard to her it seems to me that there are two separate elements clearly distinguishable: (1) The original valuation of the property of the McClave concern, which was turned over to the company for $150,000 of stock. This was a family enterprise. No share of stock was ever sold or attempted to be sold to the public. The original shareholders still hold it. Under such circumstances the valuation of the property, the business, and the good will, and the issuance of stock passed therefor inter sese, is controlled by entirely different rules than where a stock-jobbing corporation is formed for the purpose of exploiting the public. This had been an old, well-established, and successful business. The attorney who attended to the incorporation testified: That on past performances, John McClave having taken in from $25,000 to $50,000 a year actual profits, he estimated the fair valuation to be $200,000 to $250,000, but that to make it entirely conservative he put it in at $150,000. The company made a profit after the payment of all the expenses for the first year. That then the general business depression of 1907 occurred, and this enterprise shared in the general conditions. I do not see any warrant for making Mrs. Mc-

Clave account on her subscription. The agreement was that she should turn over all the business which had been left to her as sole legatee by her husband for the capital stock. This was arranged amongst themselves as a family compact. No one was hurt; no one was defrauded. It seems to me to be impossible, under such circumstances, to sustain a finding of original fraud.

Section 55 of the Stock Corporation Law (chapter 59, Const. Laws; chapter 61, Laws 1909) provides that:

"* * * Any corporation may purchase any property authorized by its certificate of incorporation, or necessary for the use and lawful purposes of such corporation, and may issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full paid stock and not liable to any further call, neither shall the holder thereof be liable for any further payment under any of the provisions of this chapter; and in the absence of fraud in the transaction the judgment of the directors as to the value of the property purchased shall be conclusive."

In Lorillard v. Clyde, 86 N. Y. 384, the court said:

"It is further claimed that the agreement is illegal, because it provides that property shall be taken to represent the whole capital, at a valuation fixed by the parties. We have not been referred to any statute which prohibits the organization of a corporation of the character of the one contemplated by this agreement, on the basis of chattel property contributed by the corporators. It cannot be assumed that the transaction was not bona fide, or that the valuation put on the vessels was fictitious or extravagant. The value of the stock would depend on the value of the property and business. The parties fixing the valuation were the only parties in interest, and we know of no principle of public policy which condemns an agreement between parties about to form a corporation, because by the arrangement the capital stock is to be represented by property which they severally contribute, at a valuation agreed upon between themselves. If it had appeared that the organization of the corporation in this way was a device to defraud the public, by putting valueless stock on the market having an apparent basis only, a different question would be presented."

In Electric Fireproofing Co. v. Smith, 113 App. Div. 615, 99 N. Y. Supp. 37, the court said:

"There is nothing to show that the parties to this private agreement did not honestly and in good faith believe that what was to be sold by the plaintiff was worth what it was to receive in exchange therefor, or, in other words, was not worth the whole capital stock to be issued by the projected new corporation. The legality of the contract can be determined only by a resort to its terms, and, as stated in Lorillard v. Clyde, 86 N. Y. 387: 'The presumption is in favor of the legality of contract. The law does not assume an intention to violate the law, nor will an agreement be adjudged to be illegal where it is capable of a construction which will uphold it and make it valid.' "

The business had been successful for over 50 years. There was no reason to suppose that it would not continue to be so. The founder had left all his property to his widow, and she and her sons formed this corporation. During the first year of its existence its gross earnings were sufficient to pay Mrs. McClave and the directors $26,300 and to show a net profit in addition of $12,128.24. So that I think, so far as the findings hold an original fraud in valuation, they are unsupported by the evidence and should be reversed, and that Mrs. McClave should not be called upon to account upon the stock subscription.

[2] 2. So far as her salary is concerned, I think she is called upon to account. Neither as a stockholder nor as vice president could she deplete the capital of the company, a trust fund for the benefit of the creditors, by taking $12,000 a year, or $9,400, as it was subsequently reduced to, without rendering any service therefor. At the time of the foundation of the corporation Mrs. McClave was about 70 years of age. At the time of the trial she was 74 or 75 and a paralytic. This so-called salary was in reality a provision made for her instead of dividends on her stock. As principal owner she was entitled to share pro rata in the profits of the business, and so long as the corporation was prosperous there could be no objection. If it paid its obligations, there were no creditors to object, and there were no stockholders to find fault. So that for the first year of its existence, when the company had made a handsome profit above all the salaries paid, she did not deplete the capital, and she is not accountable. But for the subsequent years, when the company was running at a loss, she was not entitled to divide profits by way of salary in lieu of dividends, when she performed no services and there were no profits. So that for these years she must account.

The decision should be modified, by reversing the findings of a fraudulent conspiracy and fraudulent overvaluation of the business, stock, and good will transferred to the corporation, and the fraudulent issue of stock therefor to Mrs. McClave, and requiring her to account for her subscription to such stock, and the decision and interlocutory judgment should be modified, so far as she is concerned, by restricting her accounting to the sums received by her for salary in the years ending May 9, 1909, 1910, and April 16, 1911, and, as so modified, affirmed, without costs. All concur.