[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 736 
This is a suit in equity by Mrs. H.D. McAndrews against the Idawa Gold Mining Company, its officers and directors to compel the transfer of certain corporate stock, and other relief.
The plaintiff bases her cause of action upon the following complaint:
"Comes now the plaintiff in the above entitled action and for her cause of action against the defendant, states to the court:
 I.
"That the defendant is a mining corporation organized and existing under the Mining Corporation Laws of the state of North Dakota with its principal office in the city of Bismarck and state of North Dakota, and that all the other defendants are officers and directors of said corporation. *Page 737 
 II.
"That the plaintiff is a stockholder of said corporation and holding eighteen thousand five hundred (18,500) shares of the capital stock thereof.
 III.
"That the said defendant has refused and still refuses to transfer the stock upon the books of the said corporation, defendant, in the name of the plaintiff.
 IV.
"That on or about the _____ day of July, A.D. 1920, the defendant, L.S. Honstead, being then and there the President of the Silver Mining Company and President of the Idawa Gold Mining Company, took over the Idawa Gold Mining Company claims of the Silver City Mining Company to the amount of ninety thousand one hundred ninety-seven and 55/100 Dollars ($90,197.55) which was enumerated as part of the assets of the Idawa Gold Mining Company, the said figure of ninety thousand one hundred ninety-seven and 55/100 dollars when in truth and in fact said Silver Mining Company claims were of no value, and the said transaction was fraud as against the stockholders of the Idawa Gold Mining Company.
 V.
"That the said corporation, defendant, has not complied with the Mining Corporation Laws of North Dakota by filing its report as provided by law, and whatever reports were filed did not contain the information required by the Mining Corporation Laws of the state of North Dakota.
 VI.
"That the president and directors of the said corporation, defendant, have no fixed value for the sale of stock, and some of it has been sold *Page 738 
for twenty-five cents ($.25) per share while at the same time it was sold for also fifty cents ($.50), seventy-five cents ($.75) and one dollar ($1.00) thus constituting a fraud against the stockholders of the corporation.
 VII.
"That the reason this cause of action is not brought by the corporation itself, or the directors of said corporation, is that the officers and directors of said corporation have refused and neglected to bring or prosecute the same, though requested by this plaintiff to do so on or about the 28th day of July, A.D. 1920.
 VIII.
"That said defendant does not keep or maintain its principal office at the city of Bismarck, North Dakota, as required by the articles of incorporation, and as provided by law.
 IX.
"That the plaintiff has no adequate remedy at law, and therefore prays the court for judgment:
 I.
"For an order requiring said defendant to transfer plaintiff's stock upon their books in the name of said plaintiff.
 II.
"That the stock issued by the Silver City Mining Company be cancelled and declared null and void.
 III.
"For an accounting between the defendant and the stockholders and an adjustment be made between the said stockholders and the defendant *Page 739 
during the time the said stock was being sold by said company at different values.
 IV.
"That said company be required to file regular statements containing the information provided for in the Mining Corporation Act of the state of North Dakota.
 V.
"For such other relief as to the court may seem just and equitable."
The defendants demurred to this complaint upon the grounds that the same does not state facts sufficient to constitute a cause of action, and that several causes of action have been improperly united.
The demurrer was overruled. The defendants answered denying generally the allegations of the complaint.
Before the commencement of the trial the defendants moved to strike out from the complaint paragraphs IV, V, VI, VII and VIII, and to strike from the prayer of the complaint paragraphs II, III and IV. This motion was denied.
The defendants then objected to the introduction of any evidence under the complaint, upon the ground and for the reason that the same does not state a cause of action, and because several causes of action were improperly joined. This motion was also overruled.
Practically all of the testimony offered by the plaintiff or defendants was received by the trial court, no ruling being made on objections.
The lower court found that the defendant Idawa Gold Mining Company is a corporation, organized and existing under the laws of the state of North Dakota, and engaged in mining operations near Boise, in the State of Idaho, and owner of property known as the Belshazzar mine. That the other defendants were at the time of the commencement of said action the officers and directors of said company. That the Idawa Gold Mining Company was incorporated with a capital stock of $20,000, divided into two million shares of the par value of one cent per share but that such stock was regularly sold at twenty-five cents *Page 740 
a share and a commission of twenty per cent paid by the Company to its salesmen for selling the same, and such stock was largely sold to various residents of the state of North Dakota.
That in November, 1920, the capital stock of said company was increased to $500,000, and the par value of said shares of stock increased to twenty-five cents a share.
That said L.S. Honstead was at all time herein mentioned the president of the company, and one Louis Olson its secretary.
That the board of directors of said company was inactive, and that the minute book of the said company fails to show any meetings of said board of directors from the time of the incorporation of said company in 1918 up to about the first of September, 1920, except two meetings at which two new directors were elected.
That the said Honstead and Olson exercised full and uncontrolled authority in the sale of stock and the management of the said mining property.
That in the early part of 1920 the said company, through its president, L.S. Honstead, employed one J.C. McAndrews as its agent to supervise the sale of stock and generally to look after the finances of the said company, at an agreed salary of $250 a month, with expenses, and that the said J.C. McAndrews entered upon his duties pursuant to said contract on the first day of February, 1920, and continued in said employment until the first day of September, 1920, and that during said time he earned a total sum of $1,750 for salary and incurred and paid expenses in connection with his employment in the sum of $1,394; that he was paid on such account the sum of $450, leaving a balance due and owing him on September 1st, 1920, of $2,694.
That about the first day of September, 1920, the said company, by and through its secretary, Louis Olson, delivered to the said J.C. McAndrews certificates of stock in said Company, representing 18,500 shares, as a pledge to secure the payment of the amount owing him as aforesaid. That said certificates of stock were fully executed by the proper officers of said Company and delivered to the said J.C. McAndrews; that the name of the owner thereof was in blank, but that the said J.C. McAndrews was duly authorized to fill in such blanks.
That on June 11, 1921, the said J.C. McAndrews, for a valuable consideration, endorsed and assigned the said certificates of stock to *Page 741 
the plaintiff, H.D. McAndrews, his former wife, and also assigned and transferred to her all claims and demands which he had against the said Idawa Gold Mining Company, and that the said plaintiff ever since has been, and now is, the owner and holder of the said certificates of stock and of said claims.
That the plaintiff, after securing possession and ownership of said stock, presented the same for transfer to the defendant company, but that the said transfer was refused, and that the company and its directors wholly refused to recognize the said stock or to recognize the plaintiff as a stockholder in said company.
There were further findings, but these are sufficient for our purpose.
From such findings of fact, the court made the following conclusions of law:
That the employment of J.C. McAndrews by the Idawa Gold Mining Company was regular and valid; and that on September 1st, 1920, he was justly entitled to receive from said Company the sum of $2,694.
That the said transfer of the said certificates of stock to the said J.C. McAndrews was regular and valid, and that the same was for a valuable consideration, and that by the transfer of said stock to the plaintiff she became the legal owner thereof and legally entitled to have the same transferred upon the books of the company and be recognized as a stockholder.
That the plaintiff is entitled to a judgment requiring the defendant to transfer her stock upon the books of the Company and to be recognized as a stockholder therein, and that this action was brought by the plaintiff in good faith for the purpose of obtaining such relief. But that such relief would now be wholly unavailing and inequitable, for the reason that the affairs of said company have been so manipulated and so mismanaged during the time that the plaintiff has been denied the right to participate as a stockholder in the affairs of said company, that the stock therein has become practically valueless, and that since the commencement of this action the stock of said company has been assessed and large portions thereof sold, and that if this stock was now transferred to the plaintiff it would be subject to the said assessment and liable to sale thereunder.
That the only relief which would be availing and equitable between *Page 742 
the parties, and the relief to which the plaintiff is justly entitled is for the payment of the money earned by the said J.C. McAndrews, the amount of the claim which was assigned by him to her, and that the plaintiff is entitled to judgment against the defendants for the sum of $2,694, together with interest at the rate of 6 per cent per annum from the first day of September, 1920, together with her costs and disbursements.
Judgment was entered upon order for the sum of $3,407.40, damages and interest, and costs taxed in the sum of $45.05, making a total judgment of $3,452.45.
This appeal is taken from the entire judgment and a new trial of said action is demanded in this court.
Defendants and appellants strenuously contend:
(1) That the lower court erred, first, in overruling the demurrer to the complaint.
(2) That if the complaint states any cause of action at all it is merely upon the theory that the plaintiff is a stockholder of the defendant corporation, holding 18,500 shares of the capital stock, and entitled to have such stock transferred to her upon the books of the company. That in no event under the pleadings or the evidence could the court order a money judgment in favor of the plaintiff.
(3) That there is no sufficient evidence upon which the lower court could base its finding that J.C. McAndrews was ever an employee of the Idawa Gold Mining Company, or that the company was ever indebted to him for services rendered or for expenses. That the evidence does not warrant the finding that these 18,500 shares of stock were ever pledged to him by Louis Olson, the secretary of the company, as security for this debt; but claim that the overwhelming testimony is that McAndrews was never an employee of the company; that the company was never indebted to him in any sum whatsoever; and that this stock was in his possession for a specific purpose and was appropriated by him without any authority from the corporation or any of its officers.
(4) That even conceding that the evidence is sufficient upon which to warrant a finding that McAndrews was in the employ of the company, and that on or about the first day of September, 1920, the company was indebted to him in the sum of $2,694; and even conceding *Page 743 
that the secretary of the company, Louis Olson, pledged this stock to J.C. McAndrews as security for this debt, yet the plaintiff has no legal right to recover in this action, and that the action should be dismissed for the following reasons:
(a) That the secretary of the company, Louis Olson, had no legal authority to pledge this stock without a proper resolution of the board of directors.
(b) That the corporation itself, through its stockholders or board of directors or officers, would have no authority to pledge this stock as security for a debt.
Counsel for plaintiff practically concede, that under the pleadings and issues as joined thereby, the lower court had no authority to enter a money judgment in favor of the plaintiff.
A mere cursory examination of the complaint is sufficient to show that paragraphs IV, V, VI, VII and VIII state no cause of action, and the motion to strike same from the complaint should have been allowed by the lower court. There is some question as to whether or not the complaint states any cause of action, but for the purposes of this appeal we will assume that it does, based upon the theory that the plaintiff is a stockholder, holding 18,500 shares of the capital stock of the defendant company, and that she is suing to have such stock transferred to her on the books of the corporation.
The evidence discloses that the plaintiff, H.D. McAndrews, received this stock with full knowledge of all the circumstances under which it came into the possession of her husband. Therefore, she can have no greater or further rights in the stock than the original pledgee. His right to such stock is founded upon the following claims:
(1) That he was employed by the corporation, and that the company was indebted to him under such employment.
(2) That the stock in controversy was lawfully pledged to him by Louis Olson, the secretary of the defendant company, as security for such moneys due and owing to him.
The lower court made findings of fact in favor of the plaintiff upon both of these propositions.
We do not deem it necessary to set aside these findings of the trial court, although the testimony of McAndrews himself, and the surrounding circumstances, would rather lead this court to a different *Page 744 
conclusion. The evidence discloses there was no written contract of employment, and McAndrews claims his agreement was oral and made with L.S. Honstead, the president of the company, some time in February, 1920. Nothing appears on the books or records of the company in reference to his employment. He claims to have worked from February 1st, 1920, to September 1st, 1920, and yet during all of that period never drew a cent of wages or expense money. Both L.S. Honstead, the president of the company, and Louis Olson, the secretary of the company, swear positively that McAndrews never worked for the corporation, but that he was in the employ of one Albert Solberg, who had agreed to purchase a large block of stock, and that McAndrews was assisting Solberg in disposing of this stock.
McAndrews admits that beginning about the month of July, 1920, he was endeavoring to secure the discharge or resignation of Honstead and Olson, on the ground of gross mismanagement of corporate affairs; that he solicited funds among a number of the stockholders for the purpose of going to the mine, at Boise, Idaho, and investigating conditions there and making a report to the stockholders, and the money which he has credited upon his expense account is the money received from such stockholders, and was not paid to him directly by the corporation or any of its officers.
He also admits that after he returned from Boise, Idaho, he and one Jenkins, a director of the company, employed Judge Engerud, as their attorney, who made an audit of the financial affairs of the company, and that Judge Engerud and McAndrews appeared before a stockholders' meeting held at Bismarck on the 28th or 29th of August, 1920, and Judge Engerud presented to such stockholders a detailed account of the assets and liabilities of the company. That no claim was made in said statement for any sums due McAndrews, nor did McAndrews himself make any claim for salary or expenses.
At such stockholders' meeting he was asked what his interest was in the corporation, and he stated that he was not a stockholder, and that he was merely interested in good mines.
McAndrews claims to have presented a statement of his salary and expenses to Louis Olson after the stockholders' meeting, and that the secretary allowed the account. This is positively denied by Mr. Olson.
It would seem that the natural thing for Mr. McAndrews to have *Page 745 
done was to have presented his claim at the stockholders' meeting, especially when he was asked directly what his interest was in the corporation, and particularly when his own attorney, Judge Engerud, was presenting to the stockholders an exact statement of the debts then owing by the company.
It must be remembered too that the testimony of J.C. McAndrews stands alone as to this employment, and the surrounding circumstances and testimony of the other witnesses do not substantiate his claim.
However, assuming, without conceding, that he was in fact employed by the company, and that on September 1st, 1920, the company was indebted to him in the sum of $2,694; and assuming further for the purposes of this opinion, that Louis Olson, the secretary of the company, pledged these 18,500 shares of stock with McAndrews as security for such claim, has the plaintiff established any legal right of recovery?
Counsel for plaintiff claim that she is entitled to the relief asked for in the complaint, viz., the transfer of the stock upon the corporate records in her name.
Section 138 of the Constitution of the state of North Dakota provides:
"No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; . . ."
Section 4528 of the Laws of 1913 also provides:
"No corporation shall issue stock or bonds except for money, labor done or property, estimated at its true money value, actually received by it. . . ."
This court, in Lavell v. Bullock, 43 N.D. 135, 174 N.W. 764, held that stock issued as bonus stock in violation of § 138 of the Constitution is void. On page 766 of the opinion Justice Birdzell says:
"When the Constitution and laws passed in conformity thereto forbid corporations to issue stock except for labor done, services performed, or money or property actually received, and make all fictitious increases of stock void, such an issue of stock is fraudulent, and persons to whom it is issued for which they do not pay, or do not intend to pay, anything, do not thereby become shareholders of the corporation in any sense. . ..
"The meaning and language of the constitutional provision is clear and unmistakable. If stock is issued `except for money, labor done, *Page 746 
or money or property actually received,' such issue is in direct violation of the Constitution and the statutes and is ipso facto invalid. The object of the provision in the Constitution is to prevent reckless and unscrupulous speculators from fraudulently issuing and putting on the market stocks that do not and are not intended to represent money or property of any kind. Arkansas River Land Town Canal Co. v. Farmers' Loan T. Co.13 Colo. 578, 22 P. 954. The Colorado court in that case cites with approval the language of the Wisconsin court in the case of Clarke v. Lincoln Lumber Co. 59 Wis. 655, 18 N.W. 492, to the effect that such constitutional provisions are clearly in the interest of public morals and tend to the protection of those dealing with corporations. Most of the corporations created under the laws of this state have no fund or capital which their creditors can reach except that derived from the issuance and sale of their stock; and, if this law be strictly followed, in every case corporations will not have credit upon the false pretense of having a large paid-up capital when in fact only a small percentage of the par value of the stock issued has ever come into the treasury of the company. The law is undoubtedly a salutary one, and its violation is clearly an illegal act."
So the question here confronting us is this: Can a corporation pledge its unissued stock as security for a valid debt? Because the evidence discloses here that these 18,500 shares of stock were issued in blank by the corporation and placed in McAndrews' hands some time in the month of June, 1920. The purpose for placing these shares in McAndrews' hands is in question. McAndrews claims that they were given to him with the understanding that they were to be given to certain stockholders in the state of North Dakota who had purchased stock in the Idawa Gold Mining Company at fifty cents per share, when they should have paid but twenty-five cents per share, and that this extra stock was to be given to them to equalize this charge. L.S. Honstead, the president of the company, claims that these shares were placed in McAndrews' hands with the understanding that he was to sell them and that the proceeds of the sale of this stock was to go to pay a $10,000 check which had been given by Albert Solberg upon his contract of purchase for stock, and which check had been protested by the Williston bank. *Page 747 
In either case, the stock was not the property of J.C. McAndrews, and it had never been issued to or paid for by him. His name was not filled in upon the blank certificates of stock until June 11, 1921, at the time he alleges he sold the certificates to his former wife, the plaintiff, H.D. McAndrews, for the sum of $2,500, and she herself wrote in his name. His own testimony is that on September 1st, 1920, he went to the secretary, Louis Olson, and demanded pay for his salary and expenses; that Olson told him the company had no money, and advised him to hold these shares of stock until he should be paid.
There is no question but that if on September 1st, 1920, the Idawa Gold Mining Company had been justly indebted to J.C. McAndrews for services rendered, salary and expense money, in the sum of $2,694, the corporation, by its board of directors, under proper resolution, could have issued him stock in payment of this debt, under § 138 of the Constitution and § 4528, Laws of 1913, supra. Because in that case the corporation would have issued the stock for labor done and would actually have received full value for the stock. But because the Constitution and the statute gives a corporation authority to issue stock for labor done, does it necessarily follow that a corporation can pledge its unissued stock for the debt created thereby?
In Brewster v. Hartley, 37 Cal. 15, 99 Am. Dec. 237, the facts were quite similar to the case at bar. The court said:
"The substance of the transaction is, that Wells, Fargo Co. advanced to the Placerville and Sacramento Valley Railroad Company the sum of two hundred and sixty-eight thousand dollars, and the railroad company, as security for the money so advanced, issued to Louis McLane, as the trustee for Wells, Fargo Co., ten thousand shares of the capital stock of the railroad company, to be retransferred to the company upon payment of the indebtedness for the money so advanced, and in proportional amounts as said payments should be made. The time of payment is not specified. The respondents contend that the transaction is neither a mortgage nor a pledge of the stock, but only amounts to a trust; and the appellants claim that the transaction constitutes a pledge. We are of the opinion that it is a pledge.
"A pledge is a bailment of personal property as a security for some debt or engagement. Story, Bailm. § 268. The general property in *Page 748 
the thing pledged remains in the pledgor, and only a special property vests in the pledgee. . . .
"A corporation, in pledging shares of its stock, which had not been issued at the time of making the contract, must, of necessity, issue them to the pledgee, or to some one for him. . . .
"It may be conceded that the corporation may issue its stock to its creditor in satisfaction of its debt, and the creditor may not be technically a subscriber to the stock, though he is substantially. In such case the creditor does that which is a prerequisite in every issue of stock, — he purchases and pays for the stock. His demand stands in the place of so much money. . . .
"While the position that the corporation may issue its stock in payment of its indebtedness is not questioned, it does not follow that the stock may be issued to secure such indebtedness. Had the stock been issued in the usual manner, and afterwards become the property of the corporation, and been held in such a manner that it did not merge, the corporation might deal with it the same as any stockholder, unless prohibited by the statute; but the claim of authority to pledge the unissued stock necessarily assumes the very point in controversy, — the authority to issue the stock without purchase or payment."
The capital stock of a corporation, previous to its being issued, cannot, in any proper sense, be called the property of the corporation. When the certificates of stock are issued to a stockholder, they are, in his hands, the muniments and evidence of his title to a given share in the property, income, and franchises of the corporation. Mechanics' Bank v. New York 
N.H.R. Co. 13 N.Y. 627. The corporation possesses only the right, the power to issue the stock, and a condition precedent to the exercise of the power is the purchase and payment for the stock. This restriction, if it may properly be so called, is not more unreasonable than those relating to the amount of money the corporation may borrow, and the rate of interest it may pay, and they all tend in some degree to protect the stockholders and creditors. If the power exists in the corporation to issue stock to secure a loan or indebtedness, it is practically unlimited, and the directors may issue and pledge all the capital stock not held by stockholders as security for a trifling loan, and by the aid of the stocks thus issued they may increase the capital stock, and pledge the new stock to secure another *Page 749 
loan, and thus perpetuate themselves in power beyond the reach of redress on the part of the stockholders, who may have contributed much the larger portion of the assets of the corporation.
"We are of the opinion that the shares of stock issued to McLane to secure the payment of the money advanced to the corporation were illegally issued, and were not entitled to be voted upon at the election for directors, and that the plaintiffs received a majority of the legal votes cast at the election."
To the same effect, see Star Mills v. Bailey, 140 Ky. 194, 140 Am. St. Rep. 370, 130 S.W. 1077.
The rule is also laid down in 14 C.J. page 408, § 555:
"Unless prevented by charter or statutory provision, a corporation may undoubtedly issue as collateral security for a loan or other debt shares of its stock which once have been legally issued and reacquired by it by purchase or donation, or which it otherwise has in its treasury as a part of its assets; and it has been held or assumed in some cases that, unless prohibited by some charter or statutory provision, a corporation may pledge or mortgage a part of its original unissued stock as security for a debt legally contracted. On the other hand, it has been held that shares of stock which have never been issued by the corporation, and which it is by charter or statute prohibited from issuing except on payment therefor at par, cannot legally be issued by it as collateral security for a loan or other debt. . . ."
Also see Re Progressive Wall Paper Corp. 143 C.C.A. 557, 229 Fed. 489, L.R.A. 1916E, page 563, and foot note and notation on *page 570. 
In Haule v. Consumers' Park Brewing Co. (1912) 150 App. Div. 582, 586, 135 N.Y. Supp. 902, Judge McLaughlin stated that "the corporation could issue its stock only for money paid or property received. It could not issue it as collateral security for money borrowed or for the future delivery of bonds."
From the reasoning of these authorities, we are satisfied that the Idawa Gold Mining Company could not lawfully pledge its unissued stock to J.C. McAndrews as security for the payment of any debt owing him for services rendered, labor done, or expenses incurred.
The purpose of the constitutional provision, section 138, is to protect stockholders and creditors, so that the stock of a corporation may *Page 750 
not be issued without the corporation actually receiving full value therefor. In this particular case if the company pledged 18,500 shares of its unissued stock, which McAndrews says was selling on the market at that time from twenty-five cents to one dollar per share, and hence worth at least $4,625, for a debt of $2,694, the corporate debt remains unpaid. McAndrews might have to foreclose his security. Such security might be sold for a very small portion of its value, and after applying the proceeds of the sale the company would still be indebted to him in a large amount, and might have to repledge other stock for such unpaid balance. If the directors and officers of the corporation could continue to pledge unissued stock of the corporation for loans and debts, they might do so until the entire capital stock would be dissipated and the treasury of the corporation receive but a small portion of its actual value. And it is to prevent just such a catastrophe that § 138 of the Constitution, and § 4528 of the Comp. Laws of 1913 have been adopted.
It is also our view that even if the corporation itself might have pledged its unissued stock to McAndrews as security for his debt, yet that such authority did not vest in Louis Olson, the secretary of the corporation.
The rule is laid down in 14a C.J. p. 461, § 2319, as follows:
"As a general rule an officer or agent of a corporation has no power to mortgage or pledge its real or personal property, unless he is specially authorized to do so by a vote or resolution of the board of directors, or stockholders. But in the absence of special requirements, authority to mortgage or pledge may arise by reasonable implication; and where a third person deals in good faith with an officer in the exercise of his apparent power, he may rely on such officer's act in executing a mortgage as being legally authorized, and is not bound to look beyond the mortgage, which represents on its face that it is duly authorized, for the authority for its execution. . . ."
See also 14a C.J. p. 463, § 2320.
We find the rule again stated, 14a C.J. p. 464, § 2321:
"The president, or the president and secretary have no power, merely by virtue of their offices, to execute a mortgage or pledge of the property of the corporation, even if he or they own all or most of the stock; and this rule is particularly applicable where the power to manage *Page 751 
and conduct corporate affairs is expressly vested in the board of directors. But such power may be specially conferred upon the president or president and secretary, by a by-law or resolution of the board of directors, or it may arise by implication as from his or their continued exercise of the authority with knowledge of the directors and without objection from them, or from his or their being intrusted with the management and control of the corporate affairs, or being otherwise held out as having such authority. . . ."
To the same effect, see § 2322, p. 465, 14a C.J.
The claim of the counsel for plaintiff in this regard is that the directors of the corporation were not functioning; that there had been no meeting of the board of directors from the year 1918; and that the affairs of the corporation were entirely in the hands of L.S. Honstead, president, and Louis Olson, secretary, and that therefore McAndrews having dealt with these men, that under the decisions of this court in Citizens State Bank v. Skeffington, 50 N.D. 494, 196 N.W. 953; Krumpelmann v. Ulsaker Printing Co. 50 N.D. 622, 197 N.W. 689, and Farmers' State Bank v. Brown, 52 N.D. 806, 204 N.W. 673, holding that where an officer of a corporation is not only the president but is its general and managing agent, and where the directors are inactive and for a long period of time leave him with full authority to act on behalf of the corporation, that his powers are then coextensive with the power of the corporation itself, and he has authority to do any act on its behalf which is usual and ordinary in the ordinary course of business, or has authority to do any act which the directors themselves could do, authorize or ratify, applies to this case.
We adhere to the rule laid down in these cases; but think that the rule does not apply to the facts in the instant case.
L.S. Honstead, the president of the company, was more active in managing its affairs and assumed more authority than Olson, yet he took no part in the pledging of this stock; it was the entire act of the secretary. But even conceding that the secretary was the sole managing officer and ordinarily would bind the corporation, under the rule as stated in the three cases just cited, yet McAndrews was not an innocent person dealing in good faith with one who represented himself to be an officer of the company. McAndrews himself had been connected with the affairs of the company for months prior to September *Page 752 
1, 1920. He says himself that the stockholders sent him to Boise to investigate the mining property, because he knew more about the affairs of the corporation than anyone else outside of the president and secretary. He was accusing the president of being a crook, and mismanaging the affairs of the corporation. He had employed counsel for the purpose of ousting the president and the secretary, and of preparing a financial statement for the stockholders. He himself personally appeared before the stockholders on the 28th and 29th of August, 1920, at a meeting in Bismarck. He participated in that meeting, made a speech to the stockholders, and he knew that the severance of connections with the corporation by Olson and Honstead was imminent. He knew that the stockholders were taking matters into their own hands and were not going to permit any further manipulations of the corporate property by Olson and Honstead.
Under such a state of affairs, can McAndrews claim that he in good faith dealt with Olson, believing Olson to have full power and authority to pledge the unissued stock of the corporation? We think not, and feel that the ruling laid down in Krumpelmann v. Ulsaker Printing Co. and corresponding cases cannot avail the plaintiff here.
For the reasons stated, the judgment of the trial court is reversed, and plaintiff's action will be dismissed with costs to appellant.
CHRISTIANSON, Ch. J., and NUESSLE, JOHNSON, and BIRDZELL, JJ., concur.
BURKE, J., being disqualified, did not participate; McKENNA, District Judge, sitting in his stead. *Page 753