[File No. 6571.]

LEON BRYAN, Respondent, v. NORTHWEST BEVERAGES, INC., a Corporation, Appellant.

(285 N. W. 689, 123 A.L.R. 717.)

Opinion filed May 4, 1939.

*Hyland & Foster,* for appellant.

*Thomas J. Burke, W. Ray Reichert* and *W. C. Crawford,* for re-·spondent.

278

ENGLERT, Dist. J. This is an action upon a quantum meruit. It was brought by the plaintiff to recover "the reasonable value of the services performed by him for and in behalf of the defendant corporation and of the good will and accounts conveyed by him to said corporation."

The answer of the defendant amounts to a general denial of the complaint. It alleges the defendant employed the plaintiff as a salesman at a salary of a hundred and fifty dollars per month, and that the defendant was obliged to terminate his services because he refused to carry out the instructions of the board of directors, and that he has been fully paid for all services he performed for defendant.

On the issues thus joined, the case was tried before a court and jury. A verdict of $4,500 was returned by the jury in favor of the plaintiff. Judgment was entered thereon.

The case comes before this court on appeal from the judgment and order denying judgment notwithstanding the verdict, and denying a new trial.

The issues presented by this appeal may be grouped as follows:

1. That the complaint states a cause of action on "an express contract," and there can "be no recovery on quantum meruit."

2. That the contract alleged in the complaint was made with individuals who subsequently became stockholders and officers of the de-

fendant company, with no authority to bind the defendant corporation.

3. That the contract made violates § 138 of the Constitution, and § 4528, Comp. Laws 1913.

4. That the court erred in overruling objections to the introduction of evidence.

5. That the court erred in its instructions to the jury.

6. That the evidence is insufficient to support the verdict.

The evidence of the plaintiff follows closely the allegations of the complaint. It may be epitomized as follows: From 1931 to 1936, the plaintiff was a promoter, farmer, and engaged in the illegal sale of intoxicating liquor. In connection with the handling and selling of liquor over a large portion of the state, he visited and dealt with pool-hall operators and others engaged in the illegal sale of liquor. In that way he established an extensive acquaintance with those handling and selling liquor, and those who would be most likely to take on the sale of liquor, if made legal. In 1936, an act was being initiated to legalize the sale of liquor. It was known as the Liquor Control Act. It was to be voted upon at the November 3, 1936, general election. The plaintiff was one of the prime movers and advocates of that measure. From his knowledge of the sentiment upon the subject, he felt the act would pass. With that thought in mind, he made plans to organize a corporation to engage in the wholesale liquor business. He was familiar with the most popular brands of liquor handled in this state. He had a wide acquaintance with salesmen representing wholesale liquor houses, distillers and rectifiers from other states. He went to Minneapolis, Chicago, Louisville, and Omaha, to interview wholesale liquor dealers and to negotiate for the exclusive privilege of handling their brands of liquor in this state in the event the liquor act carried at the general election. Immediately after the liquor control act passed at the November 3, 1936, election, he opened an office in Bismarck, and proceeded to contact his former customers and others who would be most likely to open liquor stores. He informed them that he was organizing a wholesale liquor corporation and solicited their patronage. He wrote letters to various wholesale liquor concerns, requesting the exclusive right to handle their brands of liquor. He then looked about for the needed capital to form his wholesale liquor corporation. He approached certain prospective incorporators and a conference was

called. At this meeting the plaintiff explained his plan and what he had done, and the customers who would do business with him. It was his opinion that the possibilities for making large profits by such a company were very good. They agreed to form a wholesale liquor corporation. They agreed that the plaintiff was to be made manager of the corporation about to be formed. They agreed that he was to be paid $150 per month for managing the business. They also agreed that for the work he had done in securing the exclusive privilege of handling certain brands of liquor, and his liquor customers' accounts, amounting to 190, with an annual volume of business amounting to "two hundred thousand dollars," the plaintiff was to receive $16,000 worth of stock in the corporation. This stock was not to be delivered to the plaintiff until the dividends thereon equalled the amount of the stock. The company was incorporated on November 10, 1936, for $100,000.

The first meeting of this corporation was held on November 15, 1936. At this meeting all of the stockholders were present. Officers were elected. At this meeting, in the presence of all the stockholders, the plaintiff enumerated the exclusive liquor privileges, and the 190 customers' accounts he was turning over to the company, and in consideration of his doing so, the stockholders agreed to issue $16,000 worth of stock on the books of the corporation, but that it was not to be delivered to the plaintiff until the dividends earned thereon equalled the face value of the stock. The defendant company did issue the stock in the name of the plaintiff and retained it on the books of the corporation. At the same meeting, the stockholders agreed to and did employ the plaintiff as manager of the corporation at $150 per month. He was retained as such manager for the month of December, 1936, and then made salesman. His stock was cancelled by the defendant company on the books of the corporation on July 15, 1937, and the plaintiff was notified that his services would terminate August 1, 1937.

The plaintiff testified that the gross business of the defendant company for the month of December, 1936, amounted to $113,000.

The defendant's testimony shows that the company earned no dividends.

We will dispose of the issues presented on this appeal in the order stated.

■ It is claimed that the complaint states a cause of action on "an express contract," and that there can "be no recovery on quantum meruit."

The defendant misinterprets the nature and character of the complaint. The action is not upon the contract. The contract was rescinded. The complaint alleged the contract as a basis for the action on quantum meruit. After the contract was rescinded, it was, as a contract, at an end. "A contract is extinguished by its rescission." Comp. Laws 1913, § 5933. But "The rescission of the express contract does not affect rights growing out of it thereafter as implied obligations on the part of the defendant company." Chesley v. Soo Lignite Coal Co. 19 N. D. 18, 121 N. W. 73. Where a party to a contract is prevented by the wrongful act of the other party from performing it, he may treat the contract as rescinded, and sue to recover the value of his services performed, or he may bring an action on the contract for a breach thereof, and recover the contract price, less the necessary expense of completing the same. True, he cannot combine the action on quantum meruit with the action for breach of contract. But he may set forth in his complaint the terms of the contract rescinded, and elect to sue and recover on quantum meruit. Clark v. New York, 4 N. Y. 338, 53 Am. Dec. 379; Boyd v. Vale, 84 App. Div. 414, 82 N. Y. S. 932; Davis v. Tubbs, 7 S. D. 488, 64 N. W. 534; San Francisco Bridge Co. v. Dumbarton Land & Improv. Co. 119 Cal. 272, 51 P. 335; Southern P. Co. v. American Well Works, 172 Ill. 9, 49 N. E. 575; Wellston Coal Co. v. Franklin Paper Co. 57 Ohio St. 182, 48 N. E. 888.

The motion to strike the complaint was properly denied.

■ It is contended that the complaint does not state a cause of action against the defendant. It is argued that the complaint sets forth a preincorporation contract, and that such is not binding upon the defendant. It is true that persons promoting and organizing a corporation have no authority to obligate the corporation by any contract made prior to its coming into existence as a corporation. Weatherford, M. W. & N. W. R. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837; Oakes v. Cattaraugus Water Co. 143 N. Y. 430, 38 N. E. 461, 26 L.R.A. 544; Gardiner v. Equitable Office Bldg. Corp. (C. C. A. 2d) 273 F. 441, 17 A.L.R. 431; and Kirkup v. Anaconda Amusement Co. 59 Mont. 469, 197 P. 1005, 17 A.L.R. 441.

It is, however, equally well established, as those cases show, that a corporation, with knowledge of a promoter's contract, in accepting the benefits therefrom, takes it subject to the burdens that go with such contract. The rule is thus stated in Cook on Corporations, 7th ed. Vol. 3, p. 2411: "A corporation, accepting the benefits of the contract of its incorporators, must accept the burden, and a promoter's contract, which has been ratified or adopted by the corporation with knowledge of such contract, may be enforced against it." By the great weight of authority in this country, a promoter's contract, made on behalf or for the benefit of a projected corporation, and not ultra vires, may, with knowledge of the facts, be adopted by the corporation, either expressly or impliedly, after it comes into existence. Morgan v. Bon Bon Co. 222 N. Y. 22, 118 N. E. 205; Huron Printing & Bindery Co. v. Kittelson, 4 S. D. 520, 57 N. W. 233; McArthur v. Times Printing Co. 48 Minn. 319, 51 N. W. 216, 31 Am. St. Rep. 653; Jones v. Smith (Tex. Civ. App.) 87 S. W. 210; Smith v. Parker, 148 Ind. 127, 45 N. E. 770; Little Rock & Ft. S. R. Co. v. Perry, 37 Ark. 164; Stilwell v. Spokane Alarm Co. 66 Wash. 703, 120 P. 85.

The complaint alleges that after the incorporation of the defendant, the plaintiff turned over to the defendant accounts of persons engaged in the retail liquor business, and who were making purchases in the sum of $200,000 worth per year, and that the defendant accepted and adopted the contract by issuing the stock in the name of the plaintiff on its books, and employing him as manager of the defendant company. The defendant maintains that in order to hold it liable on the alleged contract, plaintiff must allege formal adoption of the agreement by its board of directors. It cites and relies upon the case of Kirkup v. Anaconda Amusement Co. 59 Mont. 469, 197 P. 1005, 17 A.L.R. 441, as authority for such contention. In that case the court held that the demurrer to the complaint should have been sustained. In that case, the complaint contained no such allegation as above mentioned. Moreover, in the case before us, the plaintiff testified that, at a meeting of all the stockholders and officers of the corporation on November 15, 1936, all the stockholders agreed to accept and to adopt the preincorporation agreement made by the plaintiff with the other organizers.

The court, in the Kirkup Case, quoted from the decision in Fitzpatrick v. O'Neill, 43 Mont. 552, 118 P. 273, Ann. Cas. 1912C, 296,

so far as material, the following: "Appellants maintain that the directors alone possess the power to bind the corporation in this regard. . . . It is not the universal rule that the corporation must act exclusively through its board of directors. 'Formal action is often dispensed with, even in the most important matters, where all the members of the corporation, including the shareholders and directors, are present and concur, although there is no formal vote either of the shareholders or of the directors.'" After thus quoting from the Fitzpatrick Case, the court in the Kirkup Case said: "The authority of this case, cited and relied upon by the plaintiff, it will readily be seen, has no application to the case under consideration, as there is no contention made by the allegations of the complaint or otherwise, that the contract was assumed or adopted by all of the directors of the corporation, or all of the stockholders. Were such facts made to appear, a different conclusion would doubtless be reached, upon this phase of the case, even in the absence of formal action by the board of directors or stockholders."

A careful examination of the complaint in question convinces us that the objections urged against it by the defendant are groundless and without merit.

■ The defendant maintains that the contract to issue $16,000.00 worth of stock to the plaintiff is in contravention of § 138 of the Constitution, and violates § 4528, Comp. Laws 1913, and is void. Section 138 of the Constitution, provides: "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received." Section 4528, Comp. Laws 1913, says: "No corporation shall issue stock or bonds except for money, labor done or property, estimated at its true money value, actually received by it."

The defendant cites and relies upon the following cases: McAndrews v. Idawa Gold Min. Co. 54 N. D. 734, 210 N. W. 514, 51 A.L.R. 1123; Kirkup v. Anaconda Amusement Co. 59 Mont. 469, 197 P. 1005, 17 A.L.R. 441; Webster v. Webster Ref. Co. 36 Okla. 168, 128 P. 261, 47 L.R.A.(N.S.) 697; Rogers v. Gladiator Gold Min. & Mill. Co. 21 S. D. 412, 113 N. W. 86.

If the consideration for which the stock was to be issued violates the above constitutional and statutory provisions, then the contract would be null and void.

The defendant quotes at length from the decision of this court, in the McAndrews Case, 54 N. D. 734, 210 N. W. 514, 51 A.L.R. 1123, supra. The holding in that case is no authority on the facts here. There, this court decided, that "a pledge by a corporation of unissued corporate stock to a creditor as security for a debt, representing labor done, services rendered, and expense money, violates § 138 of the state Constitution." In that case the stock was issued direct by the corporation to the pledgee. That could not legally be done. If the stock had been sold to a purchaser for value, and thereafter repurchased by the corporation, it would then be the corporation's stock, and it could have dealt with it the same as an individual could. The capital stock of a corporation, prior to its being issued to a purchaser, in the usual manner, cannot, under the law, be regarded as the property of the corporation. It is a trust fund for the benefit of its shareholders, and for the security of its creditors. Besides, in that case, the secretary had no authority to issue the stock. Hence, the phrase, "unissued corporate stock."

The defendant also places great reliance upon the Kirkup v. Anaconda Amusement Co. Case, 59 Mont. 469, 197 P. 1005, 17 A.L.R. 441, supra. That part of the decision which the defendant claims is controlling here had to do with an agreement between promoters of a corporation to issue its stock, after it became incorporated, in payment of services for selling its stock. The court held that such a contract violated the constitutional and statutory provisions, which are the same as ours. It was there decided that such a contract is ultra vires, and could not have been legally made by the corporation itself, and that, consequently, it could much less adopt the same. The court said: "The parties to the agreement had no legal right whatever, as the promoters of the corporation or otherwise, to make a binding contract for disposition of its capital stock after its becoming a legal entity, and the corporation itself could only legally issue its stock after the labor had been done or services performed, to the reasonable value thereof in payment therefor, or for money or property in fact received by the corporation, reasonably worth the par value of such stock."

In the case of Webster v. Webster Ref. Co. 36 Okla. 168, 128 P. 261, 47 L.R.A.(N.S.) 697, supra, stock was to be issued for an unpatented formula for refining gasoline, which "cannot be said that the evidence

shows that it was of actual value, or that it was property actually received," said the court.

In the Rogers Case, 21 S. D. 412, 113 N. W. 86, supra, the court said: "He paid no money or property therefor, and the only services that he was to perform apparently were those to be performed for Crabtree individually in aiding him to dispose of the stock of the corporation and in making assays for him. Clearly such a contract was not permissible under the provisions of our Constitution, and not within the powers of the trustees of the corporation to make."

Those cases are no authority on the facts presented here. We realize that it is the purpose of those constitutional and statutory prohibitions to protect the public and those dealing with the corporation, and to prevent the issuing of its stock except for money, labor done, or property actually received. The mere formation of a corporation, fixing the amount of its capital stock, and receiving a certificate of incorporation, do not create anything of value upon which the company can do business. As stated by the court in Randle v. Winona Coal Co. 206 Ala. 254, 89 So. 790, 19 A. L. R. 118: "The reason on which the authorities last cited are rested is that the purpose of said clause in the Constitution was to protect the public, as well as stockholders, against worthless stock, and to prevent the fraudulent issue and marketing of fictitious corporate stock, based on nothing valuable as a consideration for its issue."

Whether the services performed by the plaintiff in bringing to the defendant some 190 customers' accounts, with an annual volume of business amounting to $200,000, and the good will of an established business, may be regarded as "labor done, or . . . property actually received," within the meaning of the Constitution, for $16,000 worth of stock, is the question here. According to the testimony of the plaintiff, as a result of the business and good will he brought and turned over to the defendant, its gross business for the month of December, 1936, during which he was manager amounted to $113,000.

In Washburn v. National Wall-Paper Co. (C. C. A. 2d) 81 F. 17, the court, in dealing with a constitutional and statutory provision like ours, said: "The good will of a business is property, and may have a value independent of any particular locality or any specific tangible property, and stock of a corporation issued for such good will is issued

for property actually received within the meaning of the New York stock corporation law." See also White, C. & Co. v. Jones, 79 App. Div. 373, 79 N. Y. S. 583; Williams v. McClave, 168 App. Div. 192, 154 N. Y. S. 38; Beebe v. Hatfield, 67 Mo. App. 609; Foote v. Bowman, 210 Ill. App. 631; and Brown v. Weeks, 195 Mich. 27, 161 N. W. 945. In this last case, the court said: "Referring to the matter of good will, it may be said that the good will of a business, though intangible, is property, and stock of a corporation issued for such good will is issued for property actually received within the meaning of laws allowing stock to be paid for in property."

Neither the clause in the Constitution nor the statute mentioned, limits the corporation as to the kind of property for the exchange of which it may issue stock. Harn v. Smith, 85 Okla. 137, 204 P. 642. Those provisions prohibit the issuance of stock by the corporation except for value received. Dominguez Land Corp. v. Daugherty, 196 Cal. 453, 238 P. 697, 44 A.L.R. 1.

We are of the opinion that the services performed by the plaintiff, and the property and good will taken by the defendant in exchange for the stock to be issued, were a sufficient consideration to support the contract in question.

■ It is claimed that the court erred in admitting testimony over the objection of the defendant.

The defendant specifies 57 errors in rulings on evidence. In its brief, the defendant says: "The issues as formed in the . . . complaint, the plaintiff seeks to recover on an express contract . . . is barred from recovering on quantum meruit. Therefore, all the objections made to the admission of evidence and all of the motions to strike out evidence should have been granted, for all of such testimony upon the issues as framed become immaterial. . . . He pleads express contract and he must be governed by it."

From our review of the complaint we have come to the conclusion that the action is one upon a quantum meruit. This being so, the evidence was material, and the trial court ruled accordingly.

In principle, the case of Boyd v. Vale, 84 App. Div. 414, 82 N. Y. S. 932, is very much in point here. The court there said: "The plaintiff does not sue upon the express contract. The defendant having refused to perform the contract, the plaintiff has elected to rescind it,

and brings this action upon an implied assumpsit. This he had a right to do in these circumstances. Farron v. Sherwood, 17 N. Y. 227."

There is but one assignment on rulings of evidence that merits any further consideration. Assignment number 55, presents the following question: "Now, Mr. Shipley, assuming the truth of Mr. Bryan's testimony, what in your opinion is the reasonable value of the services to which he has testified he furnished to the Northwest Beverages, taking into consideration the good will and accounts of the business which he turned over and also the work he did in negotiating exclusive contracts for the Northwest Beverages?" Shipley was engaged in the wholesale liquor business. He was vice-president of the Missouri Slope Distributing Co. He participated in the management of the company, and acted as its salesman. He heard all of the plaintiff's testimony and stated that he knew the value of the services rendered, good will and property turned over by the plaintiff to the defendant. An expert may give his opinion "upon facts testified to by other witnesses." Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359.

A witness who has knowledge of the business in which services have been rendered or property turned over, and of their value, may give his opinion as to the value thereof. Edwards v. Fargo & S. R. Co. 4 Dak. 549, 33 N. W. 100; Nelson v. First Nat. Bank (C. C. A. 8th) 69 F 798; Crusoe v. Clark, 127 Cal. 341, 59 P. 700; Harvey v. United States, 113 U. S. 243, 28 L. ed. 487, 5 S. Ct. 465; Boyd v. Vale, 84 App. Div. 414, 82 N. Y. S. 932. In the Boyd Case, the action was upon a quantum meruit to recover the value of services rendered to the defendant in helping to obtain capital for a coffee plantation, on a contract which the defendant wrongfully terminated. A question, in principle like the one above, was asked, and refused. The court said: "In view of the manifest difficulty of proving the value of such services, we think this witness was sufficiently qualified to throw some light upon it, to aid the jury, and that the evidence should have been received." One of the theories upon which opinion evidence is admitted is that of necessity. In Wishek v. United States Fidelity & G. Co. 55 N. D. 321, 213 N. W. 488, the court said: "If a witness can reasonably form a conclusion from the knowledge and information he is shown to possess his conclusion may be admissible, where the pertinent facts upon which such conclusion is based cannot be put before the court

or a jury in such a manner as to enable them to form a reasonably accurate judgment themselves. This is the practical rule of necessity."

So it has been held that a witness having knowledge of the value of good will may express his opinion as to its value. White, C. & Co. 79 App. Div. 373, 79 N. Y. S. 583; Page v. Cole, 120 Mass. 37.

The ruling of the trial court as to the competency of a witness offered as an expert will not be reversed if supported by any evidence: Edwards v. Fargo & S. R. Co. 4 Dak. 549, 33 N. W. 100; Nelson v. First Nat. Bank (C. C. A. 8th) 69 F. 798; Garr v. Cranney, 25 Utah, 193, 70 P. 853; Watriss v. Trendall, 74 Vt. 54, 52 A. 118. In the Edwards Case, the court said: "Another objection of appellant to the ruling of the trial court in admitting evidence is that the plaintiff and certain other of his witnesses testified as to the value of the services rendered, without, as claimed by appellant, properly showing qualification to so testify. We think that in the case of Tucker v. Massachusetts C. R. Co. 118 Mass. 546, the court correctly held that 'the question whether a witness has the requisite knowledge to enable him to give his opinion is one which is largely within the discretion of the presiding judge.' "

■ Defendant assigns ten errors on the instructions given by the trial judge. In fact, the entire charge to the jury is objected to. To set out the instructions objected to would unduly extend this opinion. It is enough to say that the defendant's objection is directed to the theory on which the trial court submitted the case to the jury. The court, in part, said: "The plaintiff is entitled to recover, if at all, for the reasonable worth and value of contributions made in service and accounts which enriched and benefited the defendant, brought to and conferred upon the defendant" by the plaintiff. It is the defendant's contention that the action is based upon an express contract. As stated in its brief: "Plaintiff, alleging an express contract, cannot recover on quantum meruit." But it is our view, and clearly so, that the action is brought on quantum meruit. This being so, the case was submitted to the jury on the proper theory. In Wellston Coal Co. v. Franklin Paper Co. 57 Ohio St. 182, 48 N. E. 888, the court said: "The real test in all cases of a plaintiff's right to recover as upon quantum meruit for part performance of a contract, wrongfully terminated by the defendant, de-

pends upon the consideration whether the defendant is thereby enriched at the loss and expense of the plaintiff."

■ It is also claimed that the evidence is insufficient to support the verdict. It is argued that no contract with the defendant has been shown. The plaintiff testified that at the stockholders' meeting of November 15, 1936, at which all of the stockholders, officers and directors of the defendant company were present, they accepted and adopted the preincorporation contract, which he had made with the individuals that afterwards became the stockholders and officers of the company. The evidence further shows that the defendant employed the plaintiff in accordance with the preincorporation contract, and that $16,000 worth of stock was written upon the books of the defendant, in the name of the plaintiff. These facts support plaintiff's statements as to the nature, terms and character of the agreement. It is, however, urged, that such acceptance or adoption of the contract is not binding upon the defendant because it was not adopted by a formal vote or record of the board of directors of the defendant. It is not necessary that formal action be taken by the board of directors or stockholders in order to bind the corporation.

Fitzpatrick v. O'Neill, 43 Mont. 552, 118 P. 273, Ann. Cas. 1912C, 296; Kirkup v. Anaconda Amusement Co. 59 Mont. 469, 197 P. 1005, 17 A.L.R. 441; Morgan v. Bon Bon Co. 222 N. Y. 22, 118 N. E. 205; Bommer v. American Spiral Spring Butt Hinge Mfg. Co. 81 N. Y. 468; Pearsall v. Tennessee C. R. Co. 2 Tenn. Ch. App. 682.

In the Kirkup Case, 59 Mont. 469, 197 P. 1005, 17 A.L.R. 441, the court said: "Were such facts made to appear, a different conclusion would doubtless be reached, upon this phase of the case, even in the absence of formal action by the board of directors or stockholders."

In the Bommer Case, 81 N. Y. 468, supra, the court said: "Even if not incorporated when the agreement was made, the company, by availing itself of the agreement, enjoying its benefits, and acting under and in part performing it, made it its own as effectually as if it had formally and by resolution adopted and ratified its terms."

We are of the opinion that the evidence is sufficient to support the verdict of the jury.

This disposes of the errors assigned by the appellant adversely to its

contentions: The judgment and order appealed from should be affirmed, with costs to the plaintiff. It will be so ordered.

NUESSLE, Ch. J., and MORRIS, CHRISTIANSON, and BURR, JJ., concur.

BURKE, J., did not participate, HON. M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.